# EXHIBIT 2

COMMERCIAL GUARANTY
United Bank Loan No.: ▓▓▓▓▓2194

**BORROWER:**

CLEARWATER INVESTMENT
HOLDINGS, LLC
1051 Main Street
Milton, WV 25541

**LENDER:**

UNITED BANK
500 Virginia Street East
Charleston, WV 25301

**GUARANTORS:**

JEFFREY A. HOOPS, SR.
1051 Main Street
Milton, WV 25541

PATRICIA A. HOOPS
1051 Main Street
Milton, WV 25541

**GUARANTY.** For good and valuable consideration, JEFFREY A. HOOPS, SR. and PATRICIA A. HOOPS (collectively, "Guarantors") absolutely and unconditionally guarantee and promise to pay to UNITED BANK, a Virginia banking corporation, ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of CLEARWATER INVESTMENT HOLDINGS, LLC, a Delaware limited liability company ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Guarantors further guarantee to Lender the full and prompt performance of all covenants, conditions, and agreements to be performed or observed by Borrower under the Related Documents (as that term is defined below). This Guaranty shall not exceed the Maximum Liability (as that term is defined below).

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

   **Borrower.** The word "Borrower" means Clearwater Investment Holdings, LLC, a Delaware limited liability company. The Guarantors are Members of Borrower.

   **Guarantors.** The word "Guarantors" means Jeffrey A. Hoops, Sr. and Patricia A. Hoops, jointly and severally.

   **Guaranty.** The word "Guaranty" means this Commercial Guaranty made by Guarantors for the benefit of Lender.

   **Indebtedness.** The word "Indebtedness" means (i) amounts due under the Note or Loan

Agreement including (a) all principal, (b) all interest, (c) all late charges, (d) all loan fees and loan charges, (e) all amounts advanced by Lender under the Loan Agreement with respect to obligations of Borrower thereunder, (f) all collection costs and expenses relating to the Note or to any collateral for the Note, and (ii) all debts, obligations, and liabilities of any kind for which Borrower is now or may hereafter become liable to Lender as evidenced by any renewals, modifications, substitutions, refinancings, extensions of or substitution for any of the foregoing or any part thereof, together with (y) all interest and (z) reasonable collection costs and expenses incurred by Lender in connection therewith. Collection costs and expenses include without limitation all of Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not suit is instituted, and reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services.

**Lender.** The word "Lender" means United Bank, a Virginia banking corporation, its successors and assigns.

**Loan.** The term Loan shall mean that certain credit facility in the original principal amount of Eleven Million and 00/100 Dollars ($11,000,000.00) and as documented in that certain Loan Agreement, Note, and Related Documents between Borrower and Lender of even date herewith.

**Loan Agreement.** The term "Loan Agreement" means that certain Commercial Loan Agreement of even date herewith and any modifications thereto, between Borrower, Lender, and Guarantors.

**Note.** The word "Note" means the Commercial Promissory Note of even date herewith in the original principal amount of Eleven Million and 00/100 Dollars ($11,000,000.00) from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for such Note.

**Related Documents.** The term "Related Documents" means and includes without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, escrow agreements, guaranties, security agreements, mortgages, deeds of trust, assignments of rents and leases, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness or the Loan Agreement.

**MAXIMUM LIABILITY.** The maximum liability of Guarantors under this Guaranty shall not exceed Eleven Million and 00/100 Dollars ($11,000,000.00) plus all interest thereon, plus all of Lender's costs, expenses, and reasonable attorneys' fees incurred in connection with or relating to (a) the collection of the Indebtedness, (b) the protection, collection, and sale of any collateral for the Indebtedness or this Guaranty, or (c) the enforcement of this Guaranty. Attorneys' fees include, without limitation, reasonable attorneys' fees whether or not there is a lawsuit, and if there is a lawsuit, any costs and reasonable fees for trial and appeals.

The above limitation on liability is not a restriction on the amount of the Indebtedness of Borrower to

Lender either in the aggregate or at any one time. If Lender presently holds one or more guaranties, or hereafter receives additional guaranties from Guarantors, the rights of Lender under all guaranties shall be cumulative. This Guaranty shall not (unless specifically provided below to the contrary) affect or invalidate any such other guaranties. The liability of Guarantors will be the aggregate liability of Guarantors under the terms of this Guaranty and any such other unterminated guaranties.

**JOINT AND SEVERAL LIABILITY.** The obligations of each person or entity that executes this Guaranty and those of any person or entity that may have guaranteed or that hereafter guarantees any Indebtedness or obligation of Borrower, are and will be joint and several, and Lender may release or settle with any one or more such persons or entities at any time without affecting the continuing liability of the remaining such persons or entities.

**NATURE OF GUARANTY.** Guarantors intend to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier, by reason of acceleration or otherwise, of all Indebtedness within the limits set forth in the preceding section of this Guaranty.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantors or to Borrower, and will continue in full force until all Indebtedness shall have been fully and finally paid and satisfied and all other obligations of Guarantors under this Guaranty shall have been performed in full. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantors under this Guaranty. A revocation received by Lender from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. This Guaranty covers a non-revolving line of credit and it is specifically anticipated that fluctuations will occur in the aggregate amount of Indebtedness owing from Borrower to Lender. Guarantors' liability under this Guaranty shall terminate only upon (a) payment of the Indebtedness in full in legal tender, and (b) payment in full in legal tender of all other obligations of Guarantors under this Guaranty.

**PERFORMANCE GUARANTY.** If Borrower fails to perform or observe any material covenants, conditions, and agreements required of Borrower by the Note, the Loan Agreement, or any of the Related Documents, Guarantors shall, upon request of Lender, perform such covenant, condition, or agreement, irrespective of any action or lack of action on Lender's part in connection with the acquisition, perfection, possession, enforcement, or disposition of the Indebtedness or any or all security therefor or otherwise, and further irrespective of any invalidity in the Indebtedness or the Related Documents, the unenforceability thereof, or the insufficiency, invalidity, or unenforceability of any security therefor.

**GUARANTORS' AUTHORIZATION TO LENDER. Guarantors authorize Lender, without notice or demand and without lessening Guarantors' liability under this Guaranty, from time to time: (a) to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness, which extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for**

the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (e) to determine how, when, and what application of payments and credits shall be made on the Indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the instruments creating or governing the security, as Lender in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the Indebtedness; and (h) to assign or transfer this Guaranty in whole or in part.

GUARANTORS' REPRESENTATIONS AND WARRANTIES. Guarantors represent and warrant to Lender that except as previously disclosed to Lender in writing: (a) no representations or agreements of any kind have been made to Guarantors which would limit or qualify in any way the terms of this Guaranty; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) Guarantors have full power, right, and authority to enter into this Guaranty; (d) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantors and do not result in a violation of any law, regulation, court decree, or order applicable to Guarantors; (e) Guarantors have not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or, otherwise dispose of the assets being pledged as collateral of the Loan, or any interest therein; (f) no material litigation, claim, investigation, administrative proceeding, or similar action (including those for unpaid taxes) against Guarantors is pending or threatened; (g) Lender has made no representation to Guarantors as to the creditworthiness of Borrower and Guarantors have made or had the opportunity to make any and all reviews or inspections of financial and other information relating to each Borrower; (h) Guarantors have established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition, and Guarantors agree to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantors' risks under this Guaranty, and Guarantors further agree that, absent a request for information, Lender shall have no obligation to disclose to Guarantors any information or documents acquired by Lender in the course of its relationship with Borrower; and (i) Guarantors are members of Borrower and, as such, Guarantors substantially and materially benefit from the loan made by Lender to Borrower and evidenced by the Note, and this Guaranty is given in consideration of, and as a condition to, Lender making such loans.

GUARANTORS' WAIVERS. Except as prohibited by applicable law, Guarantors waive any right to require Lender: (a) to continue lending money or to extend other credit to Borrower; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations, (c) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any

other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Lender's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

If now or hereafter (a) Borrower shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Guarantors hereby waive and relinquish in favor of Lender and Borrower, and their respective successors, until the Loan has been repaid in full, any claim or right to payment Guarantors may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Guarantors be or become a "creditor" of Borrower within the meaning of 11 U.S.C. § 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantors also waive any and all rights or defenses arising by reason of: (a) any election of remedies by Lender which destroys or otherwise adversely affects Guarantors' subrogation rights or Guarantors' rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantors may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (b) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (c) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (d) any statute of limitations, if at any time any action or suit brought by Lender against Guarantors is commenced there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (e) any defenses, including insufficient consideration, given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of enforcement of this Guaranty.

Guarantors further waive and agree not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand, or right may be asserted by the Borrower, the Guarantors, or both.

**JURY WAIVER. To the maximum extent allowed by law, Guarantors waive the right to any jury trial in any action, proceeding, or counterclaim brought by Guarantors, Lender or Borrower against another.**

**GUARANTORS' UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantors warrant and agree that each of the waivers set forth above is made with Guarantors' full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTORS.** Guarantors agree that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be prior to any claim that Guarantors may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantors hereby expressly subordinate any claim Guarantors may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantors shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender.

**SECURITY INTEREST.** Guarantors hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. Guarantors hereby grant a security interest under the Uniform Commercial Code of West Virginia in such claims, however evidenced. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantors shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantors agree and grant to Lender a nonrevocable power of attorney, and Lender hereby is authorized, in the name of Guarantors, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve, and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

> **Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.
>
> **Applicable Law.** This Guaranty has been delivered to Lender and accepted by Lender in the State of West Virginia. If there is a lawsuit, Guarantors agree upon Lender's request to submit to the jurisdiction of the Circuit Court of Kanawha County, West Virginia. This Guaranty shall be governed by and construed in accordance with the laws of the State of West Virginia.
>
> **Assignment.** If any of the Indebtedness should be assigned by Lender, this Guaranty will inure to the benefit of Lender's assignee to the extent of such assignment, provided that such assignment will not operate to relieve Guarantors from any obligation to Lender hereunder with respect to any unassigned portion of the Indebtedness and further that the rights of any assignee will be subordinate to the rights of Lender under this Guaranty as to any unassigned portion of the Indebtedness.

**Attorneys' Fees; Expenses.** Guarantors agree to pay upon demand, all of Lender's costs and reasonable expenses, including reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may pay someone else to help enforce this Guaranty, and Guarantors shall pay the costs and reasonable legal expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post judgment collection services. Guarantors also shall pay all court costs and such additional fees as may be directed by the court.

**Interpretation.** In all cases where there is more than one Borrower or Guarantors, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor," respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty. If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable. If any one or more of Borrower or Guarantor are corporations, partnerships, or other entities, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, managers, members, or agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Notices.** All notices required to be given by either party to the other under this Guaranty shall be in writing, and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing. If there is more than one Guarantor which signs this instrument, notice to any Guarantor will constitute notice to all Guarantors. For notice purposes, Guarantors agree to keep Lender informed at all times of Guarantors' current address.

**Time.** Time is of the essence in all respects hereunder.

**Waiver.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision of any other

provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantors, shall constitute a waiver of any of Lender's rights or of any of Guarantors' obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the reasonable discretion of Lender.

THE UNDERSIGNED GUARANTORS ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, GUARANTORS UNDERSTAND THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTORS' EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY." NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE.

THIS GUARANTY IS EFFECTIVE APRIL 1, 2019.

GUARANTORS:

_____
JEFFREY A. HOOPS, SR.

_____
PATRICIA A. HOOPS

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, TO-WIT:

I, Annette Haley, a Notary Public in and for said County and State, do hereby certify that Jeffrey A. Hoops, Sr. and Patricia A. Hoops, who signed the writing above bearing the date of April 1, 2019, have this day acknowledged the same before me in my said County.

Given under my hand this 2 day of April, 2019.

_____
Signature of Notarial Officer

My commission expires on: March 5, 2024.
(Stamp or Seal)




8