# EXHIBIT 3

## COMMERCIAL PROMISSORY NOTE
United Bank Loan No.: ▮▮▮▮2194

**BORROWER:**

CLEARWATER INVESTMENT
HOLDINGS, LLC
1051 Main Street
Milton, WV 25541

**LENDER:**

UNITED BANK
500 Virginia Street East
Charleston, WV 25301

**Principal Amount:** $11,000,000.00          **Effective Date:**          **April 1, 2019**

**PROMISE TO PAY. CLEARWATER INVESTMENT HOLDINGS, LLC,** a Delaware limited liability company ("Borrower"), promises to pay to the order of **UNITED BANK** ("Lender"), in lawful money of the United States of America, the original principal amount of **Eleven Million and 00/00 Dollars ($11,000,000.00)**, or so much as may be outstanding (the "Loan").

**ADVANCES.** This Note evidences a revolving line of credit loan. The proceeds of the loan evidenced hereby may be advanced in partial amounts. Advances may be requested by the undersigned official of Borrower or such other duly authorized representative(s) of Borrower as shall be designated in writing to Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (a) Borrower or any Guarantor (as defined in the Commercial Loan Agreement (the "Loan Agreement") and Commercial Guaranty of even date herewith) is in default under the terms of this Note or any agreement that Borrower or any Guarantor has with Lender, including any agreement made in connection with the signing of this Note or otherwise; (b) Borrower ceases doing business or is insolvent, or upon the death of any Guarantor; provided that, within thirty (30) days of Guarantor's death, the Lender is provided with satisfactory information demonstrating that the Guarantor's estate will remain in the same financial condition as before Guarantor's death, Lender shall permit the Guarantor's estate, successor, or assigns, to assume unconditionally the obligations arising under any Guaranty in a manner satisfactory to Lender, and, in so doing, cure the Event of Default; (c) any Guarantor claims or otherwise attempts to limit, modify or revoke such Guarantor's guarantee of this Note, the performance of Borrower of any term of the Loan Agreement or other Loan Document (as defined in the Loan Agreement) or any other loan with Lender; or (d) Borrower has applied or utilized funds provided pursuant to this Note for purposes other than those authorized by Lender.

**PAYMENT.**

    A.    Commencing on May 1, 2019, and continuing on the same day of each month thereafter, Borrower shall make twenty-three (23) consecutive monthly installment payments of accrued interest only, in arrears. A final payment of the total outstanding balance of principal, accrued interest, late charges, and any other fees and costs shall mature and be due and payable, in

CONFIDENTIAL

full, on April 1, 2021 (the "Maturity Date").

B. Interest on this Note is computed on the actual period that a balance is outstanding; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.

C. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing to Borrower. Unless otherwise agreed or required by applicable law, payments will be applied first to unpaid collection costs, including, without limitation, those costs identified in this Agreement or costs incurred by Lender in accordance with the Note, second to accrued interest, and third to principal.

**INTEREST RATE.** The interest rate of this Note shall be subject to change monthly based on changes in an independent index which is the highest 30 day LIBOR (the "Index") plus 1.50% per annum. Notwithstanding the foregoing, the interest rate of this Note shall never be less than one and one-half percent (1.50%) per annum.

As used herein, LIBOR shall mean the rate obtained by dividing: (1) the actual per annum rate of interest for deposits in U.S. dollars for the related LIBOR Interest Period (as hereinafter defined) based upon information which appears on page LIBOR01, captioned British Bankers Assoc. Interest Settlement Rates, of the Reuters America Network, a service of Reuters America Inc. (or such other page that may replace that page on that service for the purpose of displaying London interbank offered rates; or, if such service ceases to be available or ceases to be used by Lender, such other reasonably comparable money rate service as Lender may select) or upon information obtained from any other reasonable procedure, as of two Banking Days (as hereinafter defined) prior to the first day of a LIBOR Interest Period; by (2) an amount equal to one minus the stated maximum rate (expressed as a decimal), if any, of all reserve requirements (including, without limitation, any marginal, emergency, supplemental, special or other reserves) that is specified on the first day of each LIBOR Interest Period by the Board of Governors of the Federal Reserve System (the "System") or any successor agency thereto for determining the maximum reserve requirement with respect to eurocurrency funding (currently referred to as "Eurocurrency liabilities" in Regulation D of such Board) maintained by a member bank of such System, or any other regulations of any governmental authority having jurisdiction with respect thereto as conclusively determined by Lender. Subject to any maximum or minimum interest rate limitation specified herein or by applicable law, any variable rate of interest on the obligation evidenced hereby shall change automatically without notice to the Borrower on the first day of each LIBOR Interest Period. Lender shall obtain the Index from the "Money Rates" section of the Wall Street Journal. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower; provided that in such event, the Margin (as defined below) shall be adjusted in order to make the interest rate comparable to the interest rate under the prior Index. Lender will tell Borrower the current Index rate upon Borrower's request. Borrower understands that Lender may make loans based on other rates as well.

**DETERMINATION OF INDEX.** This Note may express an initial interest rate and an initial index value to five (5) places to the right of the decimal point. This expression is done solely for

CONFIDENTIAL

convenience. The reference sources for the index used by Lender, as stated in this Note, may actually quote the index on any given day to as many as five (5) places to the right of the decimal point. Therefore, the actual index value used to calculate the interest rate on and the amount of interest due under this Note will be to five (5) places to the right of the decimal point.

**ADDITIONAL LIBOR PROVISIONS.** As used herein, LIBOR Interest Period shall mean one month provided that: (1) if any LIBOR Interest Period would otherwise expire on a day which is not a Banking Day, the LIBOR Interest Period shall be extended to the next succeeding Banking Day (provided, however, that if such next succeeding Banking Day occurs in the following calendar month, then the LIBOR Interest Period shall expire on the immediately preceding Banking Day).

In the event that the Lender reasonably determines that by reason of (1) any change arising after the date of this Note affecting the interbank eurocurrency market or affecting the position of the Lender with respect to such market, adequate and fair means do not exist for ascertaining the applicable interest rates by reference to which the LIBOR then being determined is to be fixed, (2) any change arising after the date of this Note in any applicable law or governmental rule, regulation or order (or any interpretation thereof, including the introduction of any new law or governmental rule, regulation or order), or (3) any other circumstance affecting the Lender or the interbank market (such as, but not limited to, official reserve requirements required by Regulation D of the Board of Governors of the Federal Reserve System) the LIBOR plus the applicable spread shall not represent the effective pricing to the Lender of accruing interest hereunder based on the LIBOR, then, and in any such event, the accruing of interest hereunder based upon the LIBOR shall be suspended until the Lender shall notify Borrower that the circumstances causing such suspension no longer exist. In such case, beginning on the date of such suspension, interest shall accrue hereunder at a variable interest rate per annum, which shall change in the manner set forth below equal to **one** percentage point less than the Prime Commercial Rate (as hereinafter defined).

In the event that on any date the Lender shall have reasonably determined that accruing interest hereunder based upon the LIBOR has become unlawful by compliance by the Lender in good faith with any law, governmental rule, regulation or order, then, and in any such event, the Lender shall promptly give notice thereof to the Borrower. In such case, accruing interest hereunder based on the LIBOR shall be terminated and the Borrower shall, at the earlier of the end of each LIBOR Interest Period then in effect or when required by law, repay the advances based upon the LIBOR, together with interest accrued thereon. In such case, when required by law, interest shall accrue hereunder at a variable rate of interest per annum, which shall change in the manner set forth below, equal to **one** percentage point less than the Prime Commercial Rate.

As used herein, Prime Commercial Rate shall mean the rate established by the Lender from time to time based on its consideration of economic, money market, business and competitive factors, and is not necessarily the Lender's most favored rate. Subject to any maximum or minimum interest rate limitation specified herein or by applicable law, any variable rate of interest on the obligation evidenced hereby based upon the Prime Commercial Rate shall change automatically without notice to the Borrower immediately with each change in the Prime Commercial Rate. If during any period of time while interest is accruing hereunder based upon the Prime Commercial Rate, the obligation evidenced by this Note is not paid at maturity, whether maturity occurs by lapse of time, demand acceleration or otherwise, the unpaid principal balance and any unpaid interest thereon shall,

thereafter until paid, bear interest at a rate equal to **two** percentage points in excess of the rate indicated in the immediately preceding two paragraphs.

If, due to (1) the introduction of or any change in or in the interpretation of any law or regulation, (2) the compliance with any guideline or request from any central bank or other public authority (whether or not having the force of law), or (3) the failure of the Borrower to repay any advance when required by the terms of this Note, there shall be any loss or increase in the cost to the Lender of accruing interest hereunder based upon the LIBOR, then the Borrower agrees that the Borrower shall, from time to time, upon demand by the Lender, pay to the Lender additional amounts sufficient to compensate the Lender for such loss or increased cost. A certificate as to the amount of such loss or increased cost, submitted to Borrower by Lender, shall be conclusive evidence, absent manifest error, of the correctness of such amount.

Notwithstanding that the section below entitled "Prepayment," during any period of time while interest is accruing hereunder based upon the LIBOR, Borrower may not prepay any portion of the outstanding principal balance prior to the expiration of the then current LIBOR Interest Period.

**NOTICE:** Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. The rate is not necessarily the lowest rate charged by Lender on its loans.

**PAYMENT DATES.** All scheduled payments of this Note shall be due and payable on the first (1st) day of the month. If the due date of any payment under this Note shall be a day that is not a day when banking business is conducted by Lender (a "Banking Day"), the due date shall be extended to the next succeeding Banking Day; *provided, however*, that if such next succeeding Banking Day occurs in the following calendar month, then the due date shall be the immediately preceding Banking Day.

**LATE CHARGE.** If a payment, excluding any balloon payment, is ten (10) or more days late, Borrower will be charged Five Percent (5.00%) of the regularly scheduled payment with a minimum charge of Twenty-Five and 00/100 Dollars ($25.00) which shall be considered costs of collection for the purposes of this Note.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of Twenty-Five and 00/100 Dollars ($25.00) if Borrower makes a payment on this Note by a check or preauthorized charge which is later dishonored.

**PREPAYMENT.** There shall be no prepayment fee for the early repayment or payoff of this Note.

**DEFAULT INTEREST.** Upon a default under (i) this Note, (ii) the Loan Agreement, or (iii) any of the Loan Documents (as that term is defined in the Loan Agreement), for which the Lender does not accelerate this Note, the applicable interest rate to this Note shall accrue at the rate of interest in effect at that time, as described hereinabove, plus five percent (5.00%) per annum. Such default interest rate shall apply to the outstanding principal balance of this Note. Upon the curing of the default, the interest rate on this Note shall revert to the initially agreed-upon interest rate effective on

CONFIDENTIAL

the date that the default is cured.

**LENDER'S RIGHTS.** Upon an Event of Default (as defined in the Loan Agreement or any of the Loan Documents), Lender may, upon demand, declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender reasonable costs of collection. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Unless prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law. This Note has been delivered to Lender and accepted by Lender in the State of West Virginia. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the Circuit Court of Kanawha County, West Virginia. This Note shall be governed by and construed in accordance with the laws of the State of West Virginia without regard to the choice of law principles adhered to therein. It also shall constitute an Event of Default under this Note if Borrower fails to comply with or to perform any term, obligation, covenant or condition contained in any interest rate protection agreement, foreign currency exchange agreement, commodity price protection agreement or other interest or currency exchange rate or commodity price hedging arrangement between Borrower and Lender.

**JURY WAIVER. LENDER AND BORROWER HEREBY WAIVE THE RIGHT TO ANY JURY TRIAL IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER LENDER OR BORROWER AGAINST THE OTHER.**

**COLLATERAL.** This Note is secured by a security interest through a Control Agreement and the unconditional, irrevocable, joint and several guarantees of the Guarantors, all in favor of Lender, and the terms and conditions of which are hereby incorporated and made a part of this Note.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this Note, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other lawful action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the Borrower.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETE COPY OF THE NOTE.**

BORROWER:        **CLEARWATER INVESTMENT HOLDINGS, LLC,** a Delaware limited liability company

By: *[signature]*
Patricia A. Hoops, Manager