# EXHIBIT
# 4

CONFIDENTIAL

CONTROL AGREEMENT
United Bank Loan No.: ████████2194

**BORROWER:**

CLEARWATER INVESTMENT
HOLDINGS, LLC
1051 Main Street
Milton, WV 25541

**LENDER:**

UNITED BANK
500 Virginia Street East
Charleston, WV 25301

THIS CONTROL AGREEMENT (this "Agreement") is made and entered into as of this 1st day of April, 2019, by and among CLEARWATER INVESTMENT HOLDINGS, LLC, a Delaware limited liability company, whose address is 1051 Main Street, Milton, West Virginia 25541 ("Borrower"); UNITED BANK, a Virginia banking corporation, whose address is 500 Virginia Street East, Charleston, West Virginia 25301 ("Lender"); and UNITED BANK whose address is 500 Virginia Street East, Charleston, West Virginia 25301 ("Intermediary"). All capitalized terms used in this Agreement that are not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

## WITNESSETH:

WHEREAS, Borrower and Lender entered into that certain Commercial Loan Agreement of even date herewith (the "Loan Agreement") and Commercial Promissory Note of even date herewith (the "Note"), under which Lender agreed to make a loan to Borrower in the original principal amount of Eleven Million and 00/100 Dollars ($11,000,000.00) (the "Loan");

WHEREAS, as collateral for the Loan, Borrower agreed to grant to Lender a security interest in and to any financial assets held in that certain investment management account, established and managed by Intermediary and known as the "Clearwater Investment Holdings, LLC Investment Management Account" (the "Account"); and

WHEREAS, the parties hereto desire to enter into this Agreement to perfect Lender's security interest in the Account in accordance with the Uniform Commercial Code as enacted in the State of West Virginia (the "UCC").

NOW, THEREFORE, in consideration of the foregoing premises, the mutual covenants herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.     **The Account.** Intermediary hereby represents and warrants to Lender and Borrower that: (a) the Account has been established in the name of Borrower, and (b) except for the claims and interest of Lender and Borrower in the Account (subject to any claim in favor of Intermediary permitted under Paragraph 2), Intermediary does not know of any claim to or interest in the Account. All parties agree that: (i) the Account is a "securities account" within the meaning of § 8-501 of the UCC, (ii) Intermediary is a "securities intermediary" within the

SJ8373113 1                                                        1

CONFIDENTIAL

meaning of § 8-102(a)(14) of the UCC, (iii) the financial assets held in the Account constitute "financial assets" within the meaning of § 8-102(a)(9) of the UCC, and (iv) Borrower has a "security entitlement" within the meaning of § 8-102(a)(17) of the UCC with respect to the Account. All assets in the Account shall be held in the account of Intermediary or in physical bonds payable to the order of Intermediary or endorsed to Intermediary or in blank. Intermediary shall mark its records to identify the Account and to disclose the security interest of the Lender in the Account.

2.    **Priority of Lien.** Intermediary hereby acknowledges the security interest granted to Lender by Borrower; *provided, however,* Lender acknowledges and agrees that Intermediary shall not be responsible for the validity, priority or enforceability of Lender's security interest in the Account or any other collateral of Borrower. Intermediary agrees that it will not utilize any amounts in the Account to cover margin debits or calls in any other account of Borrower, and Intermediary hereby subordinates all liens, encumbrances, claims and rights of setoff it may have, now or in the future, against the Account other than the payment of Intermediary's customary fees for maintaining the Account and all other fees, charges and reversals pursuant to its agreement with Borrower (collectively the "Fees"). These Fees include, without limitation, fees associated with the preparation and negotiation of this Agreement as well as all fees and charges assessed by Intermediary as a result of it agreeing to enter into this Agreement and the ongoing administration of the Account as an account over which Intermediary has granted control to the secured creditor of its account holder. Unless required by law, Intermediary will not agree with any third party that Intermediary will comply with instructions originated by such third party directing disposition of the Account without the prior written consent of Lender and Borrower, or without the prior written consent of Lender only if Intermediary has received a Notice of Exclusive Control from Lender.

3.    **Control of the Account.** All parties agree that the Account is "investment property" within the meaning of the UCC. In order to give Lender control over the Account, as "control" is defined in § 8-106(d) of the UCC, Intermediary shall comply with instructions originated by Lender, including the receipt of an "entitlement order," as such term is defined in § 8-102(a)(8), without the further consent of Borrower, or any person acting or purporting to act for Borrower, including, directing disposition of the funds in the Account. Intermediary shall comply with, and is fully entitled to rely upon, any instruction from Lender, even if such instruction is contrary to any instruction that Borrower may give or may have given to Intermediary.

4.    **Maintenance of the Account.** In addition to the obligations of the Intermediary as set forth in this Agreement, Intermediary agrees to maintain the Account as follows:

(a)    **Notice of Sole Control.** If at any time Lender delivers to Intermediary a notice instructing Intermediary to terminate Borrower's access to the Account (the "Notice of Sole Control"), Intermediary agrees that, after receipt of such notice, it will take all instruction with respect to the Account solely from Lender, terminate all instructions and orders originated by Borrower with respect to the Account or any funds therein, and cease taking instructions from Borrower, including, without limitation, instructions for distribution or transfer of any funds in the Account.

CONFIDENTIAL

(b)      **Voting Rights.** Until such time as Intermediary receives a Notice of Sole Control, Borrower shall direct Intermediary with respect to the voting of any financial assets credited to the Account.

(c)      **Information Regarding the Account.** Borrower hereby instructs Intermediary, and Intermediary agrees, to furnish to Lender, upon request of Lender, any and all statements with respect to the Account that are customarily provided to Borrower at the time such statements are normally provided to Borrower, through the normal method of transmission, including United States mail, with a copy to Borrower, at Borrower's expense.

5.      **Intermediary's Responsibility.**

(a)      Intermediary will not be liable to Lender for complying with instructions concerning the Account from Borrower that are received by Intermediary before intermediary receives, and has a reasonable opportunity to act on, a Notice of Sole Control.

(b)      Intermediary will not be liable to Borrower or Lender for complying with a Notice of Sole Control or with instructions concerning the Account originated by Lender, even if Borrower notifies Intermediary that Lender is not legally entitled to issue a Notice of Sole Control or instructions unless Intermediary takes the action after it is served with an injunction, restraining order, or other legal process enjoining it from doing so, issued by a court of competent jurisdiction, and had a reasonable opportunity to act on the injunction, restraining order or other legal process.

(c)      This Agreement does not create any obligation of Intermediary except for those expressly set forth in this Agreement and Part 5 of Article 8 of the UCC. In particular, the Intermediary need not investigate whether Lender is entitled under the Lender's agreements with Borrower to give instructions concerning the Account or a Notice of Sole Control. Intermediary may rely on notices and communications it believes to be given by the appropriate party.

6.      **Indemnification.** Borrower agrees to indemnify and hold Intermediary and its affiliates and each of its and their respective officers, directors, employees, affiliates, agents and attorneys (each an "Indemnified Person") harmless from and against any and all liabilities, claims, demands, losses, damages, costs and expenses of any kind or nature whatsoever arising out of or in connection with this Agreement or the Account (including, but not limited to, the reasonable fees and expenses of counsel in connection with any investigative, administrative, or judicial proceeding, whether or not any Indemnified Person shall be designated a party thereto) (all of the foregoing liabilities, claims, demands, losses, damages, costs and expenses, collectively, "Indemnified Items") EVEN IF SUCH INDEMNIFIED ITEM ACTUALLY OR ALLEGEDLY ARISES FROM THE ORDINARY NEGLIGENCE OF ANY INDEMNIFIED PERSON; provided that Borrower shall have no obligation to any Indemnified Person under this Section with respect to any Indemnified Item arising from the gross negligence or willful misconduct of such Indemnified Person. Lender agrees to indemnify and hold each Indemnified Person harmless from and against any and all Indemnified Items arising out of or in connection with Intermediary's compliance with any request, notice, direction or instruction given by Lender with respect to the Account, EVEN IF SUCH INDEMNIFIED ITEM ACTUALLY OR ALLEGEDLY ARISES FROM THE ORDINARY NEGLIGENCE OF ANY INDEMNIFIED

CONFIDENTIAL

PERSON; provided that Lender shall have no obligation to any Indemnified Person under this Section with respect to any Indemnified Item arising from the gross negligence or willful misconduct of such Indemnified Person.

7. **Customer Agreement.** In the event of a conflict between this Agreement, the Investment Management Agreement governing the operation and maintenance of the Account, or any other agreement between Intermediary and Borrower affecting the Account (collectively, the "**Management Agreement**"), the terms of this Agreement will prevail. However, this Agreement will not interfere, negatively effect or otherwise obstruct or prevent Intermediary from raising any claim or defense against Borrower available to it under the Management Agreement or create any third party beneficiary rights under the Management Agreement in favor of Lender.

8. **Termination.** This Agreement shall terminate upon Intermediary's receipt of a written notice from Lender referencing this Agreement and stating that this Agreement is terminated pursuant to this Section 8. Intermediary may terminate this Agreement upon thirty (30) days' prior written notice to the other parties hereto; provided that Intermediary may terminate this Agreement upon ten (10) days' prior written notice to other parties hereto upon a breach by Borrower or Lender of this Agreement or any of the documentation governing the Account. The provisions of Sections 5 and 6 shall survive any termination of this Agreement.

9. **Notices.** All notices, requests or other communications given to Borrower or Lender shall be given in writing at the address specified below:

| | |
|---|---|
| **If to Borrower:** | Clearwater Investment Holdings, LLC<br>1051 Main Street<br>Milton, WV 25541 |
| **If to Lender:** | United Bank<br>500 Virginia Street East<br>Charleston, WV 25301<br>Attn: J. David Mills |
| **If to Intermediary:** | United Bank<br>500 Virginia Street East<br>Charleston, WV 25301<br>Attn: Stacy A. Miller |

Any party may change its address for notices hereunder by notice to each other party hereunder given in accordance with this Paragraph 9. Each notice, request or other communication shall be effective (a) if given by facsimile, when such facsimile is transmitted to the facsimile number specified in this Paragraph 9 and confirmation of receipt is made by the appropriate party, (b) if given by overnight courier, twenty-four (24) hours after such communication is deposited with the overnight courier for delivery, addressed as aforesaid, or (c) if given by any other means, when delivered at the address specified in this Paragraph 9.

10. **Modifications.** No amendment of this Agreement shall be effective unless the same shall be in writing and signed by each of the parties hereto. No waiver of any rights of any

SJ8173113 1                                                    4

CONFIDENTIAL

party hereunder shall be effective unless the same shall be in writing and signed by such party. Any such amendment or waiver shall be effective only in the specific instance and for the purpose for which given.

11. **Successors and Assigns.** This Agreement shall bind and benefit the parties hereto and their respective successors and assigns; provided that (i) Borrower may not assign this Agreement without the written consent of Lender and Intermediary, and (ii) Lender may not assign this Agreement without the written consent of Intermediary; provided, however, that if Lender is acting as a representative in whose favor a security interest is created or provided for, no such consent will be required if Lender transfers its rights and obligations under this Agreement to a transferee that is a successor representative and such successor delivers to Intermediary a written acknowledgement that it is bound hereby.

12. **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile or by electronic mail delivery of an electronic version of any executed signature page shall bind the parties hereto.

13. **Choice of Law.** This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of West Virginia, without regard to any otherwise applicable conflicts of laws principles.

14. **JURY WAIVER.** ALL PARTIES HERETO HEREBY WAIVE ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF OR IN CONNECTION WITH THE ACCOUNT OR THIS AGREEMENT.

15. **Severability.** If any term or provision set forth in this Agreement shall be invalid or unenforceable, the remainder of this Agreement, other than those provisions held invalid or unenforceable, shall be construed in all respects as if such invalid or unenforceable term or provision were omitted.

IN WITNESS WHEREOF, the parties have duly executed and delivered this Control Agreement as of the day and year first above set forth.

[Signatures Begin on Following Page]

CONFIDENTIAL

### CONTROL AGREEMENT
(Signature Pages)

BORROWER:                           **CLEARWATER INVESTMENT HOLDINGS,**
                                    LLC, a Delaware limited liability company

By: _____
     Patricia A. Hoops, Manager

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, TO-WIT:

  I, _____, a Notary Public in and for said County and State,
do hereby certify that Patricia A. Hoops, the Manager of Clearwater Investment Holdings, LLC,
a Delaware limited liability company, who signed the writing above bearing the date of April 1,
2019, has this day acknowledged the same before me in my said County to be the act and deed of
said limited liability company.

  Given under my hand this ____ day of April, 2019.

_____
Signature of Notarial Officer

My commission expires: _March 5 2024_
(Stamp or Seal)

OFFICIAL SEAL
Annette Haley
Notary Public
State of West Virginia
My Commission Expires
March 08, 2024
101 ROLLING MEADOWS
SCOTT DEPOT WV 25560

CONFIDENTIAL

## CONTROL AGREEMENT
(Signature Pages)

LENDER:                                    UNITED BANK, a Virginia banking corporation


By: _James David Mills_
      James David Mills. Vice President


STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, TO-WIT.

I, _Melanie Humphreys_, a Notary Public in and for said County and State, do hereby certify that James David Mills, a Vice President of United Bank, a Virginia banking corporation, who signed the writing above bearing the date of April 1, 2019, has this day acknowledged the same before me in my said County to be the act and deed of said banking corporation.

Given under my hand this 2 day of April, 2019.

_Signature of Notarial Officer_

My commission expires: Sept. 24, 2019 .
(Stamp or Seal)

```
NOTARY PUBLIC OFFICIAL SEAL
MELANIE HUMPHREYS
State of West Virginia
My Commission Expires
September 24, 2019
500 Virginia St East  Charleston, WV 25301
```

CONFIDENTIAL

## CONTROL AGREEMENT
(Signature Pages)

INTERMEDIARY:                     UNITED BANK

By:  _Stacy A. Miller_ _____
Stacy A. Miller, Wealth Advisor


STATE OF WEST VIRGINIA.
COUNTY OF KANAWHA, TO-WIT.

I, _Maria L. Miller_____, a Notary Public in and for said County and State, do hereby certify that Stacy A. Miller, a Wealth Advisor for United Bank, who signed the writing above bearing the date of April 1, 2019, has this day acknowledged the same before me in my said County to be the act and deed of said banking corporation.

Given under my hand this _3rd_ day of April, 2019.

_Maria L. Miller_ _____
Signature of Notarial Officer

My commission expires: _11/11/2023_
(Stamp or Seal)

```
OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
MARIA L MILLER
UNITED BANK WEALTH MANAGEMENT
PO BOX 393
CHARLESTON, WV 25322
My Commission Expires Nov. 11, 2023
```

SJ8373113 1                          8