IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JEFFREY A. HOOPS and
PATRICIA HOOPS, Individually and together
as Husband and Wife,
CLEARWATER INVESTMENT HOLDINGS, LLC,

                    Plaintiffs,

v.                                                            CIVIL ACTION NO.  3:22-0072

UNITED BANK,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant United Bank's Motion for Partial Dismissal (ECF No. 6) and Plaintiffs' Motion to Dismiss (ECF No. 9). For the reasons herein, United Bank's Motion (ECF No. 6) is **DENIED**, **in part,** as to Plaintiffs Jeffrey and Patricia Hoops' claims. However, the Court **HOLDS IN ABEYANCE** the Motion as to Plaintiff Clearwater Investment Holdings, LLC's ("Clearwater") claims. It also **STRIKES** references to the breach of duty of good faith and fair dealing as standalone claims and treats them as merely part of the breach of contract claims. Additionally, it **HOLDS IN ABEYANCE** Plaintiffs' Motion to Dismiss (ECF No. 9).

**I. FACTUAL BACKGROUND**

United Bank was a creditor of Blackjewel, LLC ("Blackjewel"), a West Virginia coal company partly owned by Plaintiff Jeffrey Hoops, who also acted as CEO. Compl. ¶¶ 9-10, 12. In July 2017, Blackjewel also obtained a loan of approximately $28 million from Riverstone Credit Partners – Direct, L.P. ("Riverstone"), which was due July 17, 2019. *Id*. ¶¶ 13, 16. To protect

United Bank and Riverstone's interests, all parties entered into an Intercreditor Agreement giving United Bank and Riverstone lien priority rights against Blackjewel in the event of default. *Id*. ¶ 15.

United Bank was also a creditor of Clearwater, a Delaware limited liability company ("LLC"). *Id*. ¶¶ 3, 52. Patricia and Jeffrey Hoops were members of Clearwater and acted as its guarantors under the loan agreement with United Bank. *Id*. ¶ 52. In light of the impending Riverstone loan obligation, Blackjewel and Clearwater reached an agreement in late June 2019, "whereby Clearwater would advance more than 9 million dollars" to Blackjewel so that Blackjewel could sustain its business operations. *Id*. 28-30. Similarly, Mrs. Hoops agreed to loan money to Blackjewel for this purpose. *Id*. ¶¶ 32, 116-24.

After negotiations fell through to extend the Riverstone loan maturity date, on June 26, 2019, Riverstone's legal counsel called and informed United Bank officials that Mr. Hoops had resigned from Blackjewel, that Blackjewel was going to file bankruptcy, and that Mr. Hoops and his family were in the process of removing all personal funds from United Bank. *Id*. ¶ 22. This information was false, but United Bank did not check its veracity. *Id*. ¶ 23. In response, United Bank froze all accounts associated with Mr. Hoops and his family members. *Id*. ¶ 21, 24.

Mr. Hoops found out his accounts were frozen after receiving a call on the same day from the Chief Operating Officer of Blackjewel's Wyoming mining operations, informing Mr. Hoops that the Wyoming employees had not received their paychecks. *Id*. ¶ 18. As a result of this call, Mr. Hoops called David Mills, Vice President of United Bank, who informed Mr. Hoops of the Riverstone call and of United Bank's decision. *Id*. ¶¶ 18-22. As a result, both Mr. and Mrs. Hoops lost all access to their money, totaling some $44 million, and Mrs. Hoops could not access her personal funds to make daily purchases. *Id*. ¶¶ 24-25, 34. Importantly, the lack of account access also caused both Mrs. Hoops' and Clearwater's loans to Blackjewel, negotiated in the wake of the

failed Riverstone loan extension negotiations, to fail, causing Blackjewel's eventual ruin. *Id*. ¶¶ 28, 31-32. On July 1, 2019, United Bank informed Clearwater that it had defaulted on its independent loan obligations with United Bank because of Blackjewel's actions. *Id*. ¶ 33. United Bank told Clearwater and Mrs. Hoops that it would release the frozen accounts if Clearwater would pay Blackjewel's debt to United Bank and if they would sign a liability waiver releasing United Bank from any wrongdoing, which they rejected. *Id*. ¶¶ 35-36. United Bank then agreed to a proposal from Riverstone to release the accounts and provide funds, under the condition that Mr. Hoops resign from Blackjewel, which he did. *Id*. ¶¶ 37-38.

Plaintiffs filed their Complaint in state court on December 30, 2021. Ex. 1, ECF No. 1-1. United Bank timely removed the action to this Court on February 10, 2022. ECF No. 1. The Complaint brings fifteen total causes of action, including six by Clearwater, seven by Mrs. Hoops, and two by Mr. Hoops. Ex. 1. On March 2, 2022, United Bank filed both an Answer and Counterclaim (ECF No. 5) and a partial Motion to Dismiss (ECF No. 6). The Motion argues for dismissal of all of Clearwater's claims on standing grounds. It also moves to dismiss Mrs. Hoops' tortious interference claim for lack of standing. It moves to dismiss both Clearwater and Mrs. Hoops' respective claims of breach of good faith and fair dealing, for failure to state a claim. Lastly, it moves to dismiss both Mr. and Mrs. Hoops' claims for intentional infliction of emotional distress for failure to state a claim. In response to United Bank's counterclaim, Plaintiffs also filed a Motion to Dismiss. ECF No. 9. The matters have been fully briefed.

## II. LEGAL STANDARD

### A. Lack of Subject Matter Jurisdiction

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the fundamental question of whether a court is competent to hear and adjudicate the claims

brought before it. It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits. Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir.1986), *rejected on other grounds*, *Sheridan v. United States*, 487 U.S. 392 (1988). A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id*. If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id*.

On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."[1] *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991) (citing *Adams v. Bain*, 697 F.2d 1213,1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987)). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citations omitted). A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."

---

[1] *Compare Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (holding that if a motion implicates the merits of a cause of action, the district court should find jurisdiction exists and treat the objection as a direct attack on the merits of the plaintiff's case). *See also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982) (recognizing that "in those cases where the jurisdictional facts are intertwined with the facts central to the merits of the dispute[,] [i]t is the better view that . . . the entire factual dispute is appropriately resolved only by a proceeding on the merits." (citations omitted)).

*Id.* (citations omitted).²

### B. Failure to State a Claim

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that

---

²*See also Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (discussing difference between facial and factual attacks under Rule 12(b)(1); *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (same).

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

### III. ANALYSIS

A. Clearwater's Standing/Capacity to be Sued

First, United Bank argues that Clearwater lacks standing to sue, because of West Virginia's "door-closing" statute, which requires a foreign LLC to have a certificate of authority to maintain a suit. Def.'s Mem. at 6-7, ECF No. 7. Because a search of West Virginia's state records reveals no registration for Clearwater, it allegedly lacks standing to sue. *Id*; Ex. 7, ECF No. 6-7. Plaintiffs respond that United Bank's argument regarding "standing" is incorrect, because the actual issue here is the company's capacity to sue, which is a distinct concept. *See* Pls.' Resp. at 5-8, ECF No. 8. Capacity, unlike standing, is an affirmative defense, and thus, United Bank allegedly waived

this issue by failing to raise it in its answer. *Id*. Alternatively, Plaintiffs argue that if the defense is not deemed waived, they are entitled to discovery to determine whether the statute is applicable to Clearwater. *Id*. at 9-10. United Bank replies that their motion sufficiently raised the issue to prevent waiver and that the door-closing statute is applicable based on the allegations in Plaintiffs' Complaint. Def.'s Reply at 2-4, ECF No. 12.

> *i. Waiver*

First, the Court notes that the Fourth Circuit has recognized a distinction between standing and capacity to sue. The two are distinct concepts, "a party's capacity to sue and be sued, and this court's Article III jurisdiction." *United Supreme Council, 33 Degree of the Ancient & Accepted Scottish Rite of Freemasonry, Prince Hall Affiliation, S. Jurisdiction of the U.S. of Am., a Tenn. Non-Profit Corp. v. United Supreme Council of the Ancient Accepted Scottish Rite for the 33 Degree of Freemasonry, Prince Hall Affiliated, a D.C. Non-Profit Corp.*, 792 F. App'x 249, 255 (4th Cir. 2019). As the Fourth Circuit explained:

> A corporation's capacity to sue or be sued is its "personal right to litigate in a federal court," 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1542 (3d ed.), and is determined by its state's law of incorporation, *see* Fed. R. Civ. P. 17(b)(2). Article III standing, in contrast – with its familiar requirement that a party invoking the jurisdiction of a federal court seek relief for a concrete, particularized injury, fairly traceable to the challenged conduct, and likely to be redressed by a favorable judicial decision, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) – "is a question of federal law, not state law," *Hollingsworth v. Perry*, 570 U.S. 693, 715, 133 S.Ct. 2652, 186 L.Ed.2d 768 (2013). To establish Article III injury, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized.' " *Spokeo, Inc. v. Robins*, –– U.S. ––, 136 S. Ct. 1540, 1548, 194 L.Ed.2d 635 (2016) (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130). Capacity to sue, on the other hand, does *not* ask whether a party has been injured; it merely determines whether that party is entitled to enforce a particular right through litigation.

*Id*. Determining that these two are distinct concepts has practical consequences. Because a challenge to standing implicates a court's jurisdiction over an issue, it can be brought at any time

under Rule 12(b)(1). *See e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992); Fed. R. Civ. P. 12. However, because lack of capacity is an affirmative defense, it must be raised by "specific denial, which must state any supporting facts that are peculiarly within the party's knowledge" *See United Supreme Council*, 792 F. App'x at 255 ("The lack of capacity to sue is an affirmative defense that must be raised in an answer, and [Defendant's] failure to do that amounts to waiver."); Fed. R. Civ. P. 9(a). Caselaw across jurisdictions indicates that "a party must raise lack of capacity to sue in an appropriate pleading or amendment to avoid waiver." *Wagner Furniture Interiors, Inc. v. Kemner's Georgetown Manor, Inc.*, 929 F.2d 343, 345-46 (7th Cir. 1991) (collecting cases).

Here, the issue is slightly complicated by the fact that, in its Answer, United Bank did not respond to the allegations in the Complaint regarding Clearwater and certain other claims by Mr. and Mrs. Hoops. Answer at n.1, ¶ 43, ECF No. 5. Instead, United Bank noted that it had filed a motion for partial dismissal on the very same day, immediately after it filed the Answer. ECF No. 6. United Bank chose to address Clearwater's claims (and the others in discussed in this opinion) entirely in the Motion to Dismiss, and the other claims in the Answer. This does not amount to waiver, particularly because the filing of a motion to dismiss tolls the requirement of an answer to the claims sought to be dismissed until 14 days after notice of the court's action on the motion. *See* Fed. R. Civ. P. 12(a)(4). Here, United Bank simply chose to address some claims exclusively via its Answer and other claims exclusively through the Motion for Partial Dismissal, which is a permissible litigation tactic. Indeed, the first responsive pleading to Clearwater's specific claims, Mrs. Hoops' claim for tortious interference, the breach of the duty of good faith and fair dealing claims, and the intentional infliction of emotional distress claims by Mr. and Mrs. Hoops, was the Motion for Partial Dismissal. The Answer specifically noted this distinction. Answer at n.1, ¶¶ 43, 72, 84, . Thus, United Bank complied with Federal Rule of Civil Procedure Rule 12(h) by raising

the issue in the first responsive pleading it made to Clearwater's claims. *See* Fed. R. Civ. P. 12(h). And, that motion, despite any mislabeling by United Bank, made clear that the West Virginia statutory bar was the basis of its challenge. *See* Mot. for Partial Dismissal at 6.

Moreover, it best serves the interests inherent in the Rules of Civil Procedure to determine that the capacity defense was not waived. "[I]t is well established that an affirmative defense is not waived absent unfair surprise or prejudice." *See Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d. 200, 205 n.3 (4th Cir. 2004) (citing *S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co.,* 353 F.3d 367, 373–74 (4th Cir. 2003).[3] Here, where the Answer and Motion were filed in the same day, and Plaintiffs were able to meaningfully respond and acknowledge the argument as early as possible, there is clearly no unfair surprise or prejudice. Further, the policy in favor of liberal amendment means that this Court would be inclined to allow an amendment for United Bank to raise this issue, and so it best serves the interest of judicial economy to consider the argument and find that it has not been waived here. *See N.A.A.C.P. Lab. Comm. of Front Royal, Va. v. Laborers' Int'l Union of N. Am.*, 902 F. Supp. 688, 699 (W.D. Va. 1993), *aff'd*, 67 F.3d 293 (4th Cir. 1995). The case is in its earliest stages and Plaintiffs can claim no real prejudice in these circumstances.

*ii. Applicability of the Door-Closing Statute*

Because the defense of capacity has not been waived, the Court must now determine whether the door-closing statute bars Clearwater's claims. The Supreme Court has long held that federal courts sitting in diversity should recognize door closing statutes. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 538 (1949) (noting that in a diversity case premised on state law, when

---

[3] These decisions involved waiver under Federal Rule of Civil Procedure 8(c), however, their general reference to affirmative defenses is insightful, and prejudice is also a factor in Rule 9(a) decisions. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1271, 1295 at 574 (4th ed. 2008).

"one is barred from recovery in the state court, he should likewise be barred in the federal court"). West Virginia's statute provides: "[a] foreign limited liability company transacting business in this state may not maintain an action or proceeding in this state unless it has a certificate of authority to transact business in this state." W. Va. Code Ann. § 31B-10-1008(a). By its very terms, then, the statute prohibits a foreign LLC like Clearwater from bringing a suit and taking advantage of the West Virginia courts when it has failed to register in the state. As United Bank correctly notes, a search of the West Virginia Secretary of State Business & Licensing Business Organization Search shows no record of Clearwater Investment Holdings, LLC, being registered to do business in West Virginia. *See* Ex. 7.[4]

In their Response and Complaint, Plaintiffs do not claim that Clearwater was ever authorized to do business in West Virginia. *See e.g.*, Pls.' Resp; Compl. Nor does their Complaint aver that it is registered in the state. However, as Plaintiffs correctly note, the issue of whether Clearwater can maintain suit is also dependent on the applicability of the door-closing statute to Clearwater. Again, the statute only applies to "[a] foreign limited liability company transacting business in this state." W. Va. Code Ann. § 31B-10-1008(a). The Code then goes on to specify activities that do not constitute transacting business. *See* W. Va. Code Ann. § 31B-10-1003. Clearwater now claims that it may have simply maintained bank accounts in West Virginia, which would not constitute "transacting business" and allow it to maintain suit. *See* Pls.' Resp. at 9-10 (citing W. Va. Code Ann. § 31B-10-1003 (3)).

---

[4] Normally, matters outside the pleading are not considered in ruling on a Rule 12 Motion. *See Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004). However, this Court may take judicial notice of the business registration records maintained by the State because they are matters of public record. *See* Fed. R. Evid. 201 (governing judicial notice); *Hanks v. Wavy Broad., LLC*, No. 2:11CV439, 2012 WL 405065, at *4 (E.D. Va. Feb. 8, 2012) ("Information that is readily accessible through the State Corporation Commission's website is a matter of public record, of which the Court may take judicial notice." (collecting cases)).

But as Defendant notes, many of the activities Plaintiffs have described in their own Complaint almost certainly meet the definition of transacting business. For example, Plaintiffs allege that Clearwater's principal place of business is in Cabell County, West Virginia. Compl. ¶ 3. They also note that the "causes of action in this case arose in Cabell County, West Virginia" and that any "cause(s) of action sounding in contract… were formed in Cabell County, West Virginia, and the damages suffered by Plaintiffs were suffered in Cabell County, West Virginia." *Id*. ¶¶ 6-7, 51-55. These activities, by their very description, likely constitute transacting business, as they are not listed as exceptions under West Virginia law. *See e.g*., W. Va. Code Ann. § 31B-10-1003.

Given the procedural posture, the Court finds that the best course of action is to allow supplemental pleading on the matter for Plaintiffs to address whether the allegations stated in the Complaint constitute business activities for statutory purposes.[5] Thus, the Court **HOLDS** Defendant's Motion to Dismiss **IN ABEYANCE** as to Clearwater's claims and **DIRECTS** the parties to further brief the issue. The Court **DIRECTS** Plaintiffs to file a Sur-Response not to exceed ten pages **on or before July 11, 2022**. Defendant shall have until **on or before July 18, 2022**, to file a Sur-Reply, which also should not exceed ten pages.

---

[5] At this time, the Court does not find it necessary to convert the Motion to Dismiss to a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."); *Miller v. Maryland Dep't of Nat. Res*., 813 F. App'x 869, 873 (4th Cir. 2020) (stating "[a] proper Rule 12(d) conversion first requires that all parties be given some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment" (internal quotation marks and citation omitted)). The business activities described by Plaintiffs in the Complaint are not matters outside the pleadings, and so the Court need not convert the Motion. And while it is typically premature to consider an affirmative defense in a motion to dismiss, here there appear to be facts sufficient to rule on the defense apparent from the face of the complaint. *See KBC Asset Mgmt. NV v. DXC Tech. Co.*, 19 F.4th 601, 611 n.3 (4th Cir. 2021)

B. Tortious Interference

United Bank argues that Mrs. Hoops was never a party to the proposed loans negotiated between Clearwater, Mr. Hoops, and Blackjewel, and thus lacks standing to bring a tortious interference claim. Def.'s Mem. at 8-10. Mrs. Hoops responds that she had an individual claim for a contract between herself and Blackjewel, which United Bank tortiously interfered with, separate and apart from the loan agreements. Pls.' Resp. at 16. United Bank replies that Mrs. Hoops' claim regarding any separate contract are contradicted by the loan agreements, which were attached to the motion as exhibits, and by her testimony in Blackjewel litigation that she never agreed to personally loan money to Blackjewel. Def.'s Reply at 8-9.

As an initial matter, Mrs. Hoops lacks standing to bring a tortious interference claim, individually, on behalf of Clearwater against United Bank based on her position as a member of Clearwater. This is "because the members of an LLC '[e]lected to conduct their business through a limited liability company…. [at] bottom, they gave up standing to claim damages to the LLC, even if they also suffered personal damages as a consequence." *Young v. Affliction Holdings, LLC*, No. 5:16-11342, 2017 WL 2272075, at *3 (S.D.W. Va. May 24, 2017) (quoting *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 348 (4th Cir. 2013)). And West Virginia law makes it clear that a limited liability company is a legal entity distinct from its members and that a member is not a co-owner, nor do they have any transferable interest in the LLC's property. *See e.g.,* W. Va. Code Ann. §§ 31B-2-201; 31B-5-501(a).

However, in the Complaint, which the Court must take as true at this stage in the litigation, Mrs. Hoops asserts that she had a separate contract forming the basis of her claims. She states that she held her own personal investment accounts, separate and apart from any Clearwater accounts. Compl. ¶ 103. She allegedly could not access these accounts (or the Clearwater accounts) while

she was negotiating with Mr. Hoops about financing Blackjewel. *Id*. ¶¶ 25, 28, 30. Thus, as alleged, this constituted a separate contract negotiation, apart from the later DIP loan proposal and bankruptcy filing. *Id*. ¶ 116. United Bank allegedly interfered with this agreement and prevented its consummation by unlawfully freezing Mrs. Hoops' accounts. *Id*. ¶ 116-24. This states a claim for tortious interference. The Court notes that Defendant may well be right that the fact that the DIP loan documents, showing that loans to Blackjewel were to come from Clearwater and Mr. Hoops only, refute a claim that Mrs. Hoops had agreed to loan money to Blackjewel. Similarly, her deposition testimony in other litigation apparently states that she did not intend to personally loan money to Blackjewel. But because these matters are not fully developed and involve consideration of materials outside the pleadings[6] the Court **DENIES** the Motion as to Count 12 at this time.

### C. Breach of Duty of Good Faith and Fair Dealing

Plaintiffs Clearwater and Patricia Hoops have asserted causes of action for the alleged breach of the duty of good faith and fair dealing. Compl. ¶¶ 60-64, 111-15. United Bank argues for dismissal on the basis that West Virginia does not recognize these claims as a separate cause of action. *See* Def.'s Mem. at 10 (citing *Highmark W. Va., Inc. v. Jamie*, 655 S.E.2d 509, 514 (W. Va. 2007); *Corder v. Countrywide Home Loans, Inc.*, No. 2:10-0738, 2011 WL 289343, at *3 (S.D.W. Va. Jan. 26, 2011)). In their response, Plaintiffs indicated that they recognize that West Virginia does not provide an independent claim for the breach of good faith and fair dealing. Pls.' Resp. at 17-18. They ask the Court to instead strike the title and incorporate the allegations contained under those titles within their respective breach of contract claims. Thus, the Court **STRIKES** references

---

[6] The Court can likely consider the DIP loan documents, which were attached to the Motion to Dismiss, because the Court may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about its authenticity. *See Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, (4th Cir. 2007). But these loan documents are not, on their own, enough to resolve the factual issue at this stage.

to the breach of duty of good faith and fair dealing as standalone claims and treats them as merely part of the breach of contract claims. It incorporates paragraphs 60-64 into Clearwater's breach of contract claim (Count 2) which is held in abeyance. It likewise incorporates paragraphs 111-15 into Mrs. Hoops' breach of contract claim (Count 10), which remains pending.

### D. Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress ("IIED") under West Virginia law, a plaintiff must prove the following elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Lab'ys, Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998). This language was patterned after Section 46 of the Restatement (Second) of Torts, which requires that the conduct be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 705 (W. Va. 1982). Intentional infliction of emotional distress is considered an independent cause of action in West Virginia. *Travis*, 504 S.E.2d at 424; *see Richards v. Walker*, 813 S.E.2d 923, 927 n.6 (W. Va. 2018) ("Intentional or reckless infliction of emotional distress, also called the 'tort of outrage,' is recognized in West Virginia as a separate cause of action." (citing *Travis*, 504 S.E.2d at 424)).

Here, at this stage of the litigation, Mr. and Mrs. Hoops have adequately stated a claim. In their complaint, Plaintiffs assert that United Bank had actual knowledge that Mrs. Hoops and Clearwater had not defaulted on any banking obligations but chose to freeze access to all accounts,

including Mrs. Hoops's daily checking account, in response to a single phone call. Compl. ¶¶ 21-25, 125-128. Additionally, the amount in the joint accounts totaled some $44 million dollars. *Id.* ¶ 34. United Bank froze every account held by the Hoops and Clearwater to secure a debt of $6 million owed by Blackjewel, a non-affiliated company, based on the allegations of a single person. *Id.* ¶¶ 34, 58.

Further, this Court has recognized that an IIED claim may lie for harassment and coercion of a debtor in attempting to collect a debt. *See Adkins v. Wells Fargo Bank, N.A.*, 434 F. Supp.3d 419, 427 (S.D.W. Va. 2020). Here, the conduct goes beyond merely harassing phone calls and allegedly involves freezing accounts, with no real evidence of default on any banking obligations, to allow the bank to steal funds and gain leverage. Mr. Hoops's claim for emotional distress is predicated on the same conduct. And while the account freeze is not alleged to have affected Mr. Hoops's ability to make daily purchases or otherwise cause embarrassment, the Complaint alleges that the freeze was "an attempt to gain leverage over Jeff Hoops in their negotiations concerning United Bank's priority lien status." Compl. ¶¶ 145-49. Thus, this also adequately raises a specific allegation which may support an IIED claim.

Accepting the factual allegations as true, the Court finds that this Complaint offers enough detail and factual support to state an IIED claim. Even though the Court will allow Plaintiffs to pursue their IIED claim past the motion to dismiss stage, Plaintiffs will have to meet the high standard for IIED by proving the outrageousness of Defendant's conduct and showing severe emotional distress through discovery. Thus, the Court **DENIES** Defendant's Motion to Dismiss as to these counts (Counts 13 and 15) as to both Mr. and Mrs. Hoops.

E. Plaintiffs' Motion to Dismiss Counterclaim

As a final matter, the Court notes that United Bank has filed a Motion to Dismiss Defendant's Complaint for Declaratory Judgment. ECF No. 9. United Bank had asked the Court to determine that Plaintiffs are required to indemnify United Bank if it is held legally responsible for claims brought against it in a separate pending action between Blackjewel and United Bank. Def.'s Compl. ¶ 35, ECF No. 5 Because the indemnity provision exists in the Clearwater Loan Agreement and the status of Clearwater's claims has not been decided, the Court will also **HOLD IN ABEYANCE** its decision on this Motion.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES, in part**, United Bank's Motion (ECF No. 6) as to Plaintiffs Jeffrey and Patricia Hoops' claims (Counts 13 and 15). It also **STRIKES** references to the breach of duty of good faith and fair dealing as standalone claims and treats them as merely part of the breach of contract claims. The Court **HOLDS IN ABEYANCE** the Motion as to Plaintiff Clearwater Investment Holdings, LLC's ("Clearwater") claims. Additionally, it **HOLDS IN ABEYANCE** Plaintiffs' Motion to Dismiss (ECF No. 9).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:  July 1, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE