IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JEFFREY A. HOOPS and
PATRICIA HOOPS, Individually and together
as Husband and Wife,
CLEARWATER INVESTMENT HOLDINGS, LLC,

          Plaintiffs,

v.                                        CIVIL ACTION NO.  3:22-0072

UNITED BANK,

          Defendant.

MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant United Bank's Motion for Partial Dismissal. ECF No. 6.  For the reasons herein, the Motion is **GRANTED** as to Clearwater's claims. Accordingly, Clearwater is **DISMISSED** from the action as a Plaintiff, though the Court notes it remains as a Counter-Defendant.

I. FACTUAL BACKGROUND

United Bank was a creditor of Blackjewel, LLC ("Blackjewel"), a West Virginia coal company partly owned by Plaintiff Jeffrey Hoops, who also acted as CEO. Compl. ¶¶ 9-10, 12. In July 2017, Blackjewel also obtained a loan of approximately $28 million from Riverstone Credit Partners – Direct, L.P. ("Riverstone"), which was due July 17, 2019. *Id*. ¶¶ 13, 16. To protect United Bank and Riverstone's interests, all parties entered into an Intercreditor Agreement giving United Bank and Riverstone lien priority rights against Blackjewel in the event of default. *Id*. ¶ 15.

United Bank was also a creditor of Clearwater, a Delaware limited liability company ("LLC"). *Id*. ¶¶ 3, 52. Patricia and Jeffrey Hoops were members of Clearwater and acted as its guarantors under the loan agreement with United Bank. *Id*. ¶ 52. In light of the impending Riverstone loan obligation, Blackjewel and Clearwater reached an agreement in late June 2019, "whereby Clearwater would advance more than 9 million dollars" to Blackjewel so that Blackjewel could sustain its business operations. *Id*. 28-30. Similarly, Mrs. Hoops agreed to loan money to Blackjewel for this purpose. *Id*. ¶¶ 32, 116-24.

After negotiations fell through to extend the Riverstone loan maturity date, on June 26, 2019, Riverstone's legal counsel called and informed United Bank officials that Mr. Hoops had resigned from Blackjewel, that Blackjewel was going to file bankruptcy, and that Mr. Hoops and his family were in the process of removing all personal funds from United Bank. *Id*. ¶ 22. This information was false, but United Bank did not check its veracity. *Id*. ¶ 23. In response, United Bank froze all accounts associated with Mr. Hoops and his family members. *Id*. ¶ 21, 24.

Mr. Hoops found out his accounts were frozen after receiving a call on the same day from the Chief Operating Officer of Blackjewel's Wyoming mining operations, informing Mr. Hoops that the Wyoming employees had not received their paychecks. *Id*. ¶ 18. As a result of this call, Mr. Hoops called David Mills, Vice President of United Bank, who informed Mr. Hoops of the Riverstone call and of United Bank's decision. *Id*. ¶¶ 18-22. As a result, both Mr. and Mrs. Hoops lost all access to their money, totaling some $44 million, and Mrs. Hoops could not access her personal funds to make daily purchases. *Id*. ¶¶ 24-25, 34. Importantly, the lack of account access also caused both Mrs. Hoops' and Clearwater's loans to Blackjewel, negotiated in the wake of the failed Riverstone loan extension negotiations, to fail, causing Blackjewel's eventual ruin. *Id*. ¶¶ 28, 31-32. On July 1, 2019, United Bank informed Clearwater that it had defaulted on

its independent loan obligations with United Bank because of Blackjewel's actions. *Id*. ¶ 33. United Bank told Clearwater and Mrs. Hoops that it would release the frozen accounts if Clearwater would pay Blackjewel's debt to United Bank and if they would sign a liability waiver releasing United Bank from any wrongdoing, which they rejected. *Id*. ¶¶ 35-36. United Bank then agreed to a proposal from Riverstone to release the accounts and provide funds, under the condition that Mr. Hoops resign from Blackjewel, which he did. *Id*. ¶¶ 37-38.

Plaintiffs filed their Complaint in state court on December 30, 2021. Ex. 1, ECF No. 1-1. United Bank timely removed the action to this Court on February 10, 2022. ECF No. 1. The Complaint brings fifteen total causes of action, including six by Clearwater, seven by Mrs. Hoops, and two by Mr. Hoops. Ex. 1. On March 2, 2022, United Bank filed both an Answer and Counterclaim (ECF No. 5) and a partial Motion to Dismiss (ECF No. 6). In it, United Bank argued that Clearwater lacked capacity to sue because of West Virginia's door-closing statute, which bars a foreign limited liability company from suing if it is transacting business in the state without a valid certificate of authority. Because many of Clearwater's own allegations involved activities that most likely constituted transacting business, the Court ordered supplemental briefing on the issue. Mem. Op. and Order, ECF No. 33. Clearwater filed its Sur-Response on July 18, 2022, and United Bank filed its Sur-Reply on July 25, 2022. ECF Nos. 39, 43. With this additional briefing, United Bank's Motion is ripe as to Clearwater's claims.

## II. LEGAL STANDARD

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set

forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. "At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citations omitted).

### III. ANALYSIS

In its Sur-Response, Clearwater makes several requests and arguments. First, it seeks leave to amend the Complaint to "correct" certain "jurisdictional allegations" based on information it claims it did not previously have. *See* Sur-Response at 2-4, ECF No. 39. Secondly, Clearwater argues that its conduct did not constitute "transacting business" for the purposes of the door-closing statute. *Id*. at 4-7. Lastly, it asks the Court to stay the action pending Clearwater's application to the Secretary of State for a certificate of authority, if it finds that Clearwater was conducting business in West Virginia. *Id*. at 8-9. As discussed further below, these arguments are unavailing.

<u>A. Amendment</u>

In its Sur-Response, Clearwater first seeks leave to amend the Complaint to change so-called "jurisdictional allegations." Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's

leave," and directs courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, a court should grant leave to amend a pleading unless it would result in prejudice to the opposing party, the motion was brought in bad faith, or permitting amendment would be futile. *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) (citation omitted); *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (citation omitted).

As an initial matter, the Court notes that Clearwater has not properly moved to amend the Complaint; it has merely sought leave to amend in the body of its Sur-Response. A party seeking to amend a complaint should file a motion to amend and include a copy of the proposed amended pleading. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008).

But perhaps more importantly, any proposed amendments here would be futile, as discussed further below, and arguably in bad faith, because the exhibits from the Motion to Dismiss, which were expressly incorporated into Clearwater's Complaint, prove that at least some of Clearwater's proposed amended allegations are false.[1] For example, Plaintiffs argue that their amended pleading would aver that: Clearwater maintained a notice mailing address in Milton, West Virginia, which is the address of Clearwater's accountant and CFO; Clearwater is purely a holding company of subsidiaries, some of which are conducting business in West Virginia; Clearwater has no employees, and conducts no business which independently subjects it to tax payments in West Virginia; and any contracts giving rise to the contract action were

---

[1] As discussed in the previous Memorandum Opinion and Order, the Court will not normally consider documents outside of the pleadings. *See Williams v. Branker*, 462 F. App'x 348, 352 (4th Cir. 2012) (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). However, the Court may consider "documents that are explicitly incorporated into the complaint by reference." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016) (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322 (2007)). Here, the Complaint discusses the loan documents generally, and specifically mentions the Loan Agreement, the Line of Credit, the Promissory Note, and the Investment Management Account. *See* Compl. ¶¶ 51-52.

formed in West Virginia, but involve only interstate business activities. Sur-Response at 2-3. But these allegations are demonstrably untrue.

While the Court should take allegations in the light most favorable to the nonmoving party, it need not accept false claims. *See Francis,* 588 F.3d at 195 (upholding dismissal of claim where allegations were "patently untrue"); *Jacobsen v. Bank of America, N.A.,* No. 3:09-00077, 2010 WL 514068, at *3 (W.D. Va. Dec. 13, 2010) (finding that plaintiff's averment [of a fact to the contrary] cannot overcome what is plain on the face of the HUD-1 statements"). For example, the Commercial Loan Agreement forming the basis for Clearwater's contractual claims lists Clearwater's principal office and principal place of business as an address in Milton, West Virginia. *See* Ex. 2 at 1, ECF No 6-2. It was signed by Mrs. Hoops as Clearwater's "Manager" and Mr. Hoops. *Id*. at 22. The Commercial Guaranty contains the same address. Ex. 3, ECF No. 6-3. The Commercial Promissory Note and the Control Agreement between Clearwater and United Bank list Clearwater's address as in West Virginia[2] and list Mrs. Hoops as the Manager. *See* Exs. 5, 6, ECF Nos. 6-5, 6-6.

Any information regarding its own principal place of business would have been available to Clearwater at the time of filing and was not merely found out through discovery, and any claims to the contrary are disingenuous. Having a principal place of business in West Virginia appears to (logically) be considered transacting business, subjecting an LLC to the statutory certificate of authority requirement. *See* W. Va. Code Ann. § 31B-10-1003. And thus, any attempt to enumerate other activities that may meet a statutory definition of "not transacting

---

[2] To the extent that Clearwater claims that this was a mere notice address for Clearwater, this seems particularly unlikely given that the Control Agreement specifically includes a paragraph for notice addresses for all parties. Listing the same West Virginia address as its primary address when providing information as Borrower is a strong indicator that Clearwater considered West Virginia its principal place of business.

business" is futile because Clearwater was engaged in at least one activity constituting transacting business, meaning it needed to obtain a certificate of authority per statute.

### B. Transacting Business

As a last-ditch effort to save its Complaint, Clearwater claims that the allegations stated in the original Complaint do not constitute transacting business. As discussed in the previous Memorandum Opinion and Order, the Complaint alleges that Clearwater's principal place of business is in Cabell County, West Virginia. Compl. ¶ 3. It further alleges that the "causes of action in this case arose in Cabell County, West Virginia" and that any "cause(s) of action sounding in contract… were formed in Cabell County, West Virginia, and the damages suffered by Plaintiffs were suffered in Cabell County, West Virginia." *Id*. ¶¶ 6-7, 51-55. As discussed above, those same contracts support that Clearwater's office and principal place of business is in Cabell County, West Virginia.

Clearwater argues first that contracts are not per se business transactions. Sur-Response at 4-6. It argues that the mere formation of a contract (which it explicitly alleged), rather than its performance, is insufficient to constitute "transacting business." *Id*. Clearwater points out that the West Virginia Business Corporation Act ("WVBCA") contains a provision that states "[a] foreign corporation is deemed to be transacting business in this state if (1) [t]he corporation *makes a contract* to be performed, in whole or in part, by any party thereto in the state." *See* W. Va. Code Ann. § 31D-15-1501(d) (emphasis added). However, the Uniform Limited Liability Company Act ("ULLCA"), to which Clearwater is subject, does not contain this language. Clearwater suggests that the lack of similar language in the ULLCA means that the West Virginia legislature purposefully excluded contract formation from the definition of transacting business. Sur-Response at 4-6 (citing *Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067,

2071-73 (2018) (recognizing that courts usually presume that differences in language of companion statutes convey differences in meaning)).[3]

But this seems unlikely, given the differences inherent in the two statutory schemes. Indeed, the ULLCA largely defines "transacting business" by listing multiple activities that do not constitute transacting business. *See id*. § 31B-10-1003. This does not include an exception for contract formation which, by the very terms of the statute, means that it constitutes transacting business. The WVBCA explicitly defines transacting business, but it, unlike the ULLCA, prevents foreign companies from "conducting affairs" until it obtains a certificate of authority; it also covers a wider variety of issues. *See id*. § 31D-15-1501. While many of the activities not constituting conducting affairs are similar to those not constituting transacting business under the ULLCA, the two statutory schemes do not even use identical language in their provisions for foreign company certification requirements. It is likely that the West Virginia legislature found it unnecessary to specifically include a provision stating that contract formation constitutes a business transaction because the ULLCA defines business transaction primarily by way of exception. Moreover, it is both sensible and obvious that contract formation, such as the activity alleged here, is a fundamental business transaction.

But more importantly here, regardless of whether the ULLCA explicitly references contract formation in its definition of transacting business, the terms of the contracts and the existing allegations in the Complaint show that performance of the same was to take place in West Virginia. For example, the Complaint alleges that the causes of action arose in Cabell County, West Virginia, where the contracts were formed, and the damages suffered. *See* Compl. ¶¶ 6-7, 51-55. The contracts also indicate that Clearwater, whose principal place of business and

---

[3] It is unclear that the ULLCA and WVBCA, adopted almost entirely from Model Uniform Acts, are sufficiently similar to constitute companion statutes.

office are listed as Milton, West Virginia, was being loaned money out of United Bank's Charleston, West Virginia office. Thus, the contract for a loan contemplated action by a party that would take place in whole or in part in West Virginia.

Alternatively, Clearwater formed a contract to be performed in West Virginia when it made its own loan to fund Blackjewel (a company whose principal place of business is also in West Virginia.) Compl. ¶¶ 10, 44. Clearwater now claims it would amend its allegations to specify that the loan to Blackjewel, which operates in multiple states, would only fund their Kentucky and Wyoming operations, meaning that the contract was not to be performed in West Virginia. *See* Sur-Response at 7. First, this assertion is moot in light of the finding that Clearwater was transacting business in at least one way. And this requested amendment also appears to be disingenuous where the Debtor-in-Possession ("DIP") motions filed in Blackjewel's Bankruptcy Court case do not support this assertion.[4]

Clearwater now argues that the contractual agreements were merely to allow Clearwater to maintain its bank accounts at United Bank (a statutory exception to transacting business) – a proposition clearly inconsistent with allegations in the Complaint and the actual contract documents themselves. Sur-Response at 6-7. Finally, simply because Count I is independent of any contract between Clearwater and United Bank does not mean Clearwater has capacity to bring that claim. Indeed, the door-closing statute bars all claims. Thus, the allegations, as they stand, contemplate a loan to fund a company with West Virginia business operations and a loan

---

[4] The DIP Motions are validly considered because the Court may consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about its authenticity. *See Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, (4th Cir. 2007). The DIP motions represent that the funding provided by the DIP loan (from Clearwater) were to "enable the Debtors to continue to operate during the Course of the Chapter Eleven Cases." *See* Ex. 1 at 21, ECF No. 6-1. There is nothing in this motion to indicate that any funds borrowed from Clearwater would be restricted to funding Blackjewel's West Virginia operations. In fact, the Motion specifically notes that nearly $9 million of loan proceeds would remain *after* eliminating debt and funding payroll in Wyoming – presumably to fund Blackjewel's corporate and mining operations in West Virginia.

from a West Virginia bank, which do not meet any statutory exceptions. Instead, Clearwater was transacting business based on its own allegations; without a certificate of authority, it cannot bring its claims.

### C. Stay

Lastly, Clearwater requests that, if it lacked capacity to bring its claims, the Court stay proceedings until it can properly register with the State. Clearwater is correct that a court may stay proceedings if it determines a "foreign corporation…requires a certificate of authority," and allow the corporation to come into compliance with the Act and maintain suit. *See* W. Va. Code Ann. § 31D-15-1502(c); *see also Dieter Eng'g Servs., Inc. v. Parkland Dev., Inc.*, 483 S.E.2d 48, 55 (1996) (holding that dismissal of an action was not required even where the plaintiff corporation did not obtain certificate of authority as foreign corporation until after action commenced). However, that provision is part of the WVBCA and there is no analogous provision in the ULLCA.

It is not this Court's job to insert words into a statute that do not exist. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)("[w]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal citations omitted). The legislature prescribed the effect of the door-closing statutes in both Acts, and specifically authorized a procedural mechanism in the courts to overcome it in one instance, and not another. This appears to be an intentional omission. Thus, this Court will not grant this requested relief.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion is **GRANTED**, as to Clearwater's claims. ECF No. 6. Accordingly, Clearwater is **DISMISSED** from the action as a Plaintiff, though the

Court notes it remains as a Counter-Defendant.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: August 2, 2022

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE