IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JEFFREY A. HOOPS and PATRICIA HOOPS,
Individually and together as Husband and Wife,

           Plaintiffs,

v.                                       CIVIL ACTION NO.   3:22-0072

UNITED BANK,

           Defendant/Counter Claimant,

v.

CLEARWATER INVESTMENT HOLDINGS, LLC and
JEFFREY A. HOOPS and PATRICIA HOOPS,
Individually and together as Husband and Wife,

           Counter Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Counter Defendants Clearwater Investment Holdings, LLC and Jeffery and Patricia Hoops's Motion to Dismiss Counter Claimant United Bank's Complaint for Declaratory Judgment. ECF No. 9. For the reasons herein, the Motion is **DENIED.**

**I. BACKGROUND**

Counter Claimant United Bank was a creditor of Blackjewel, LLC ("Blackjewel"), a West Virginia coal company partly owned by Counter Defendant Jeffrey Hoops, who also acted as CEO. Compl. ¶¶ 9-10, 12, ECF No. 1-1. United Bank was also a creditor of Clearwater, a Delaware limited liability company ("LLC"). *Id*. ¶¶ 3, 52. In April 2019, Clearwater and United

Bank entered into a loan agreement, granting Clearwater an $11 million line of credit. Answer & Countercl. ¶ 14, ECF No. 5. Patricia and Jeffrey Hoops were members of Clearwater and acted as its guarantors under the loan agreement with United Bank. Compl. ¶ 52. The Clearwater Loan Agreement contained a series of "Affirmative Covenants," including a broad indemnification provision. Answer & Countercl. ¶ 19-20.

This case stems from United Bank's alleged improper freezing of the bank accounts of Clearwater, Blackjewel, and the Hoops couple. Compl. ¶ 1. In addition to catalyzing the case at hand, this incident led Blackjewel and related debtors to file an Adversary Proceeding in the Southern District of West Virginia's Bankruptcy Court in June 2020, alleging that United Bank tortiously interfered with their attempts to obtain financing for Clearwater. Answer & Countercl. ¶ 21-23. As of the issuance of this Memorandum Opinion, that proceeding is unresolved. *See Blackjewel et al. v. United Bank*, No. 3:20-ap-0300.

Counter Defendants initiated this action by filing their Complaint in state court on December 30, 2021. ECF No. 1. United Bank timely removed the action to this Court on February 10, 2022. *Id*. On March 2, 2022, United Bank filed its Answer (ECF No. 5), which included a Counterclaim for Declaratory Judgment. In the sole count Counterclaim, United Bank requested that the Court adjudicate the indemnity provision contained in the loan agreement between United Bank and Defendants. United Bank asks that the Court find that Counter Defendants must indemnify the Bank if it is held legally responsible for claims brought against it in the related bankruptcy proceeding. On March 14, 2022, Counter Defendants filed a Motion to Dismiss United Bank's Complaint for Declaratory Judgment under Rules 12(b)(1) and (6). ECF No. 9. United Bank responded on March 28, 2022 (ECF No. 14) and Counter Defendants Replied on April 8, 2022 (ECF No. 20). On August 2, 2022, the Court dismissed Clearwater from the action as a

plaintiff. ECF No. 28. At that time, the Court noted that Clearwater remained as a Counter Defendant in the present dispute. *Id*.

## II. LEGAL STANDARD

### A. 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits. Challenges to jurisdiction under Rule 12(b)(1) may be raised in two distinct ways: "facial attacks" and "factual attacks." *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986), *rejected on other grounds*, *Sheridan v. United States*, 487 U.S. 392 (1988). A "facial attack" questions whether the allegations in the complaint are sufficient to sustain the court's jurisdiction. *Id*. If a "facial attack" is made, the court must accept the allegations in the complaint as true and decide if the complaint is sufficient to confer subject matter jurisdiction. *Id*.

On the other hand, a "factual attack" challenges the truthfulness of the factual allegations in the complaint upon which subject matter jurisdiction is based. In this situation, a "district court is to regard the pleadings' allegations as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."[1] *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Trentacosta v. Frontier Pac.*

---

[1] *See also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (recognizing that "in those cases where the jurisdictional facts are intertwined with the facts central to the merits of the dispute[,] [i]t is the better view that ... the entire factual dispute is appropriately resolved only by a proceeding on the merits." (citations omitted)).

*Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir. 1987)). To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id*. (citations omitted). A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*. (citations omitted).[2]

### B. 12(b)(6) Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). While the facts alleged in the complaint need not be probable, the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court accepts all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting, in part, Fed. R. Civ. P. 8(a)(2)).

---

[2] *See also Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (discussing difference between facial and factual attacks under Rule 12(b)(1)).

Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

### III. ANALYSIS

**A. 12(b)(1) Motion to Dismiss for Lack of Jurisdiction**

Under the Declaratory Judgment Act ("the Act"), a district court, in "a case of actual controversy within its jurisdiction . . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act grants district courts the ability to hear pleas for declaratory judgments but allows courts the discretion to abstain from such cases. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-87 (1995). Here, United Bank has sought a declaratory judgment as to Counter Defendants' duty to "indemnify and hold harmless" United Bank against claims brought by the debtors in the bankruptcy action. Answer & Countercl. ¶¶ 35-36. In their 12(b)(1) Motion to Dismiss for Lack of Jurisdiction, Counter Defendants argue that United Bank lacks standing, or in the alternative, that its injuries are "so contingent on future factors" that the Court should decline to exercise its discretionary authority under the Act to hear the case. Pls.' [Counterdefs.'] Mot. to Dismiss Def.'s [Counter Claimant's] Compl. for Decl. J. 3-4. This is a facial attack on the Court's jurisdiction under Rule 12(b)(1); Counter Defendants' challenge is to the sufficiency of the Counterclaim to support standing. *Id*. Therefore, the Court will accept the allegations in the Counterclaim as true when evaluating the Motion to Dismiss. *See Adams*, 697 F.2d at 1219.

If United Bank lacks standing to bring this claim, this Court lacks authority to hear the

case, regardless of the Act. Federal courts are courts of limited jurisdiction, bound by the confines of Article III, § 2 of the Constitution of the United States to only have the competency to hear "cases or controversies." The Supreme Court has found that standing under Article III requires an "irreducible minimum," such that the plaintiff must have (1) suffered an injury-in-fact, (2) which is fairly traceable to the defendant's alleged behavior, and (3) is redressable by the relief sought from the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quotations omitted). Ripeness, like standing, is a constitutional and prudential doctrine that limits federal courts' jurisdiction to the "cases" and "controversies" described in Article III of the Constitution. The doctrine's "basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967); *see also National Park Hospitality Ass'n v. Dept. of Interior*, 538 U.S. 803, 807-08 (2003).

The parties dispute whether United Bank has suffered an injury-in-fact which could support standing under Article III. Counter Defs.' Mot. to Dismiss Counter Claimant's Compl. for Decl. J. 4-5; Def.'s [Counter Claimant's] Resp. to Pls.' [Counter Defs.'] Mot. to Dismiss 4-5. Counter Defendants argue that United Bank could only suffer an injury if it either settles the bankruptcy case or has a verdict rendered against it; therefore, they assert, United Bank cannot argue that injury is actual or imminent. Counter Defs.' Mot. to Dismiss Counter Claimant's Compl. for Decl. J. 4-5. In response, United Bank argues that litigation expenses it has incurred during the bankruptcy proceeding are actual, concrete injuries.[3] Counter Claimant's Resp. to

---

[3] United Bank does not cite to pertinent caselaw when forwarding this argument. *See* Counter

-6-

Counter Defs.' Mot. to Dismiss 4-5. Additionally, United Bank argues that the Affirmative Loan Covenants require not only indemnification, but also contain a duty-to-defend and save harmless. *Id*. Therefore, Defendant asserts, they need not have a verdict rendered against them to have suffered an injury for which Counter Defendants have an obligation to redress. *Id*.

The Fourth Circuit has distinguished between duty to indemnify and duty-to-defend suits when assessing a plaintiff's Article III standing and ripeness. *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019).[4] In a duty-to-defend case, a party is allegedly required to pay the costs of defending a suit prior to judgment. *Id*. (citing *A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co.*, 559 F.2d 928, 931 (4th Cir. 1977)). In such suits, an Article III court may issue a declaratory judgment addressing a party's alleged duty to defend. *Id*. (citing *Med. Assurance Co. v. Hellman*, 610 F.3d 371, 381–82 (7th Cir. 2010) (permitting a declaratory judgment action addressing an insurer's duty to defend because "[t]hat question is sufficiently distinct from the issues that have arisen thus far in the state proceedings [concerning indemnification.]")). *Trustgard* contrasted duty-to-defend cases with indemnification cases, holding that "suits about the duty to indemnify—unlike the duty-to-defend suits—would ordinarily be advisory when the insured's liability remains undetermined." *Id*. (citing *Lear Corp. v.*

---

Claimant's Resp. to Counter Defs.' Mot. to Dismiss 4-5. As discussed below, the Fourth Circuit has a clearly established standard for determining standing to obtain declaratory judgment regarding indemnification and duty-to-defend agreements. Rather than arguing within this framework, United Bank cites to a series of inapposite cases concerning, *inter alia*, recovery of attorney's fees under consumer protection law, *Prescott v. Seterus, Inc.*, 684 Fed. App'x 947 (11th Cir. 2017), and violation of an agreement not to file suit, *Fuel Automation Station, LLC v. Frac Shack, Inc.*, 2021 WL 6118655 (D. Colo. Apr. 2, 2021). As none of the cited cases are relevant to the pertinent area of law in the instant dispute, the Court will not address them.

[4] The Court recognizes that *Trustgard* did not technically reach the jurisdictional question in its holding, choosing instead to first address a dispositive discretionary jurisdictional question. 942 F.3d at 201. However, *Trustgard* summarized and clarified Fourth Circuit doctrine concerning standing for indemnification and duty-to-defend disputes. *Id*. at 200-01; *see also Canal Ins. Co. v. 5M Trans., LLC*, 2022 WL 2196269 at *3 (S.D.W. Va. June 17, 2022) (applying *Trustgard*'s standing analysis).

*Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583–85 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established.")). As such indemnity cases call for advisory opinions, they are unripe for adjudication. *Id.*; *see TransUnion LLC v. Ramirez*, 142 S. Ct. 2190, 2203 (2021) (concerning ripeness).

Accordingly, the justiciability of United Bank's claim depends on whether United Bank has plausibly asserted that the contractual provision at issue contains a duty-to-defend United Bank against the bankruptcy action, rather than merely a duty to indemnify United Bank against any damages sustained in the action. The Court finds that the provision at issue can be plausibly interpreted as containing a duty-to-defend clause—as well as a duty to indemnify—which is applicable to United Bank's contentions in the instant case. The parties entered into a loan agreement on April 2019, which contains a broad indemnification provision. Answer & Countercl. at Ex. 1, 13 § 5(i). As subject to an "Affirmative Loan Covenant," the borrower (here, Clearwater, guaranteed by the Hoops couple) must: "[a]t all times, both before and after repayment of the Indebtedness, at its sole cost and expense, *defend,* indemnify, exonerate, and save harmless Lender and all those claiming by, through or under Lender (each an 'Indemnified Party') from and against any and all claims, expense, damage, loss or liability incurred by an Indemnified Party including, without limitation, reasonable attorneys' and experts' fees and disbursements" arising out of a list of enumerated situations. *Id*. (emphasis added).

United Bank's Counterclaim asks that the Court find that Counter Defendants must "indemnify and hold harmless" the Bank "against [d]ebtors' claims" in the bankruptcy action, citing subsection 5(i) as the source of this indemnification. Answer & Countercl. ¶ 35. Furthermore, in response to the instant motion, United Bank has argued that the subsection

includes a duty-to-defend the Bank, as well as a duty to indemnify. Counter Claimant's Resp. to Counter Defs.' Mot. to Dismiss 7. Drawing all plausible inferences in the non-moving party's favor—given the plain language of the Affirmative Loan Covenant requiring Counter Defendants to "defend" the Bank, the Counterclaim's citation to that provision, and United Bank's express invocation of that duty-to-defend[5]—the Court concludes that the Bank has standing to bring the Counterclaim and that this claim is ripe.[6] Accordingly, the Court declines to abstain from evaluating United Bank's Counterclaim under the Act and **DENIES** Counter Defendants' Motion under 12(b)(1).

### B. 12(b)(6) Motion to Dismiss for Failure to State a Claim

Counter Defendants have also motioned to dismiss United Bank's Counterclaim for failure to state a claim upon which relief can be granted. Counterdefs.' Mot. to Dismiss Counter Claimants' Compl. for Decl. J. 7. Counter Defendants argue that as United Bank is being sued for an intentional tort in the bankruptcy proceeding, United Bank cannot be indemnified by the

---

[5] The Court is cognizant of the fact that the Counterclaim did not expressly invoke Counter Defendants' duty-to-defend the Bank: the Counterclaim states that "the Clearwater Loan Agreement clearly require[s] Clearwater, as Borrower, and Mr. and Mrs. Hoops, as Guarantors, *to indemnify and hold harmless* United Bank against [d]ebtors' claims." Answer & Countercl. ¶ 35 (emphasis added). However, in evaluating a Motion to Dismiss under Rule 12(b)(1) which raises a facial challenge, the Court will draw all reasonable inferences in the non-moving party's favor. *Adams*, 697 F.2d at 1219 (holding that facial challenges under 12(b)(1) afford the non-moving party the same procedural protections they would receive under Rule 12(b)(6)). Here, it can reasonably be inferred that the Counterclaim seeks Counter Defendants to defend them against debtors' claims, in addition to indemnifying them in any eventual judgments. This conclusion is further supported by Paragraph 34 of the Counterclaim, which discusses the currently pending claims brought against United Bank.

[6] Where a plaintiff has suffered an injury-in-fact sufficient for standing, "a federal court's obligation to hear and decide cases within its jurisdiction 'is virtually unflagging'" and invocation of "prudential ripeness" doctrine to avoid hearing a claim should be avoided. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (quoting *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014)); *see also Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 670 n.2 (2010) (discussing ripeness).

Affirmative Covenant's provisions. *Id*. at 8-9. In support of this proposition, Counter Defendants cite both the language of the Clearwater Loan Agreement's Affirmative Covenants and West Virginia's purported public policy against indemnification agreements for intentional conduct. *Id*. at 9. In response, United Bank recasts the language at issue in the Agreement and argues that West Virginia allows indemnification for intentional acts where the parties have clearly expressed the intent to create such indemnification. Counter Claimant's Resp. to Counter Defs.' Mot. to Dismiss 7-9.

In debating interpretations of the Clearwater Agreement, the parties have cited to the Supreme Court of Appeals of West Virginia's interpretation of exculpatory agreements for intentional acts. Counter Defs.' Mot. to Dismiss Counter Claimant's Compl. for Decl. J. 8-9; Counter Claimant's Resp. to Counter Defs.' Mot. to Dismiss 8. When interpreting exculpatory agreements, West Virginia courts assume general exculpatory provisions do not apply to intentional torts. *Murphy v. North American River Runners, Inc.*, 412 S.E.2d 504, 510 (1991). However, where circumstances clearly indicate that parties intended for their agreements to cover intentional torts, courts will not displace that contractual agreement. *Id.*; *see Perrine v. E.I. du Pont de Nemours & Co.*, 694 S.E.2d 815, 845-47 (W. Va. 2010) (finding that parties clearly intended intentional acts to be covered in exculpatory agreement); *Lutz v. Turner Broad. Sys., Inc.*, 187 F. Supp. 3d 706, 712-14 (N.D.W. Va. 2016) (enforcing an exculpatory agreement covering negligence). While the case at hand involves an indemnification and duty-to-defend provision rather than an exculpatory agreement, the Court recognizes the similarities between the different liability-shifting provisions and the shared public policies implicated. Additionally, the Supreme Court of Appeals of West Virginia has applied *Murphy* to other analogous liability-limiting agreements in the past. *See Finch v. Inspectech, LLC*, 727 S.E.2d 823, 832-34 (W. Va. 2012)

(applying *Murphy*'s analysis to a limitation of liability provision in a home inspection agreement).

More generally, the Supreme Court of Appeals of West Virginia has held that "[c]ontracts of indemnity against one's own negligence do not contravene public policy and are valid." *Elk Run Coal Co., Inc. v. Canopius U.S. Ins., Inc.*, 775 S.E.2d 65, 72 (W. Va. 2015) (quoting *Sellers v. Owens–Illinois Glass Co.*, 191 S.E.2d 166 (1972)). Additionally, the Supreme Court has—on at least one occasion—found a duty-to-defend in an intentional tort case where the elements in the complaint "are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policies." *Butts v. Royal Vendors, Inc.*, 504 S.E. 2d 911, 916 (W. Va. 1998) (concerning defamation). Taking West Virginia's decisions regarding exculpatory agreements and indemnification provisions together, this Court concludes that duty-to-defend and indemnification agreements for intentional acts do not contravene public policy in West Virginia, so long as the clear intention of the parties was to create such an agreement.

Therefore, whether the duty-to-defend and indemnification provision at issue here covers the bankruptcy proceeding based in intentional tort turns on whether the provision was clearly intended to apply to intentional conduct by United Bank. In sum, under the Clearwater Loan Agreement's Affirmative Covenants, the borrower (here, Clearwater, guaranteed by the Hoops couple) must:

> "At all times, both before and after repayment of the Indebtedness, at its sole cost and expense, defend, indemnify, exonerate, and save harmless Lender and all those claiming by, through or under Lender (each an '<u>Indemnified Party</u>') from and against any and all claims, expense, damage, loss or liability incurred by an Indemnified Party including, without limitation, reasonable attorneys' and experts' fees and disbursements, which may at any time (including, without limitation, before or after discharge or foreclosure of any of the Loan Documents) be imposed upon, incurred by or asserted or awarded against Indemnified Party and arising from or out of:
> (i)    any liability for damage to person or property arising out of any violation of this Agreement or any of the Loan Documents;
> (ii)    any breach of any representation or warranty of Borrower contained in this Agreement or any of the Loan Documents or in any certificate or other writing

|     |     |
| --- | --- |
|     | submitted to the Lender in connection therewith; or |
| (iii) | any act, omission, negligence or conduct (a) occurring on or related to any portion of the operations or business interest of Borrower, or (b) arising or claimed to have arisen, out of any act, omission, negligence or conduct of Borrower or any representative, lender, agent, or contractor of Borrower, occupant or invitee thereof, or (c) which otherwise is in any way related to Borrower's operations. *Notwithstanding the foregoing, an Indemnified Party shall not be entitled to indemnification in respect of claims arising from acts of its own negligence, gross negligence or willful misconduct to the extent that such negligence, gross negligence or willful misconduct is determined by the final judgment of a court of competent jurisdiction, not subject to further appeal, in proceedings to which such Indemnified Party is a proper party.*" |

Answer & Countercl. at Ex. 1, 13 § 5(i) (emphasis added).

United Bank asserts that "the Clearwater Loan Agreement clearly require[s] Clearwater, as Borrower, and Mr. and Mrs. Hoops, as Guarantors, to indemnify and hold harmless United Bank against Debtors' claims" and cites to subsection 5(i)(i) in support of this contention. *Id*. ¶ 35. Counter Defendants have sought to dismiss this claim based on the language in the second half of subsection 5(i)(iii), arguing that the emphasized language above applies to the entirety of section 5(i). Counter Defs.' Mot. to Dismiss Counter Claimant's Compl. for Decl. J. 9. The latter half of 5(i)(iii) exempts Borrowers from indemnifying an Indemnified Party, where that party seeks indemnification from "claims arising from acts of its own negligence, gross negligence or willful misconduct." Answer & Countercl. at Ex. 1, 13 § 5(i)(iii). Counter Defendants argue that the intentional tort allegations in the bankruptcy proceeding would fall under the phrase "willful misconduct," thereby excusing Counter Defendants from their indemnification obligations. Counter Defs.' Mot. to Dismiss Counter Claimant's Compl. for Decl. J. 9. In response, United Bank states that the 5(i)(iii) provision applies only to subsection (iii), rather than to section 5(i) as a whole, and accordingly is not relevant to its indemnification claim brought under subsection 5(i)(i). Def.'s Resp. at 10. In making this argument, United Bank relies upon the provision's use of the disjunctive "or" between subsections, as well as the explanatory clause "notwithstanding the

foregoing" directly preceding the language at issue. *Id*. In turn, Counter Defendants reply that this theory of construction would render the limiting language meaningless, as Indemnified Parties could "always attempt to rely on a different subsection to negate its intent." Counterdefs.' Reply at 7. Furthermore, Counter Defendants argue that the liability sought to be indemnified—the tort of interference with business relations arising out of United Bank's freezing of the bank accounts—should fall under subsection 5(i)(iii) rather than the asserted 5(i)(i). *Id*. at 8.

The Court's primary consideration in interpreting the construction of a contract is ascertaining the intention of the parties. *Antero Resources Corp. v. Directional One Servs. Inc. USA*, 873 S.E.2d 832, 842 (W. Va. 2022). This intention "must be gathered from an examination of the whole instrument, which should be so construed, if possible, as to give meaning to every word, phrase and clause and also render all its provisions consistent and harmonious." *Id*. (quoting Syl., *Henderson Dev. Co. v. United Fuel*, 3 S.E.2d 217 (1939)). Moreover, West Virginia law provides that "a valid written agreement using plain and unambiguous language is to be enforced according to its plain intent and should not be construed." *Toppings v. Rainbow Homes, Inc.*, 490 S.E.2d 817, 822 (1997). "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." *Antero*, 873 S.E.2d at 842 (quoting Syl. pt. 3, *Cotiga Dev. Co. v. United Fuel Gas Co.*, 128 S.E.2d 626 (1962)).

As a preliminary matter, the Court finds that the latter half of 5(i)(iii) exempting Counter Defendants from indemnifying and defending United Bank from claims arising from "willful misconduct" only applies to the first half of subsection (iii), not to the entirety of section 5(i). This interpretation gives credence to the plain meaning and grammatical construction of section 5(i); the limiting language is confined to within subsection (iii), rather than placed separately as a more

broadly applicable caveat. The disjunctive "or" between the subsections further indicates that each is to be interpreted as an independent scenario in which indemnification may apply, rather than as three inter-related prerequisites required to invoke indemnification. *See Allied World Surplus Lines Ins. Co. v. Day Surgery LLC*, 451 F. Supp. 3d 577, 591 (S.D.W. Va. 2020) (recognizing that "[t]he use of the word 'or' indicates an alternative choice.") (quoting *State v. Wilkerson*, 738 S.E.2d 32, 38 (W. Va. 2013)). Accordingly, the later half of (iii) plainly does not apply to subsection (i) or (ii).

Counter Defendants argue that this interpretation of section 5(i) engenders surplusage, whereby United Bank could always invoke either 5(i)(i) or 5(i)(ii) to avoid the limitations of the latter half of 5(i)(iii). Counter Defs.' Reply to Counter Claimant's Resp. to Counter Defs.' Mot. to Dismiss 7. This ignores the fact that each subsection of 5(i) could refer to a different factual scenario.[7] Following this Court's command to "give meaning to every word, phrase and clause," *Antero*, 873 S.E.2d at 842, the Court must view each subsection of 5(i) as referring to an alternative instance in which indemnification could occur. Finally, even if the intentional tort arose out of actions falling under 5(i)(iii) rather than 5(i)(i),[8] the Court will not hold on the issue in deciding the Motion to Dismiss. At this stage in the proceedings, the Court finds only that it is plausible that the liability sought to be indemnified and defended against could fall under 5(i)(i) of the Clearwater Loan Agreement's Affirmative Covenants. *See Ashcroft*, 556 U.S. at 678 (requiring

---

[7] For instance, an "act, omission, negligence or conduct" implicating subsection 5(i)(iii) must arise out of the borrower's "operations or business interest" in one of three specified means. Contrast this with subsection 5(i)(i), which is only applicable when the Clearwater Loan Agreement or associated Loan Documents are violated. While an act of negligence, for example, arising out of the borrower's operations might involve a violation of the Clearwater Loan Agreement, it need not do so in order to implicate the 5(i)(iii) indemnification provision.

[8] In the event both provisions are found to be applicable, the Court would be bound to follow the age-old rule of construction requiring a more specific provision to be applied over a more general provision. *See Antero*, 873 S.E.2d at 842 (stating that every provision in a contract should be construed to have meaning, if possible).

the Court to make all reasonable inferences in the non-moving party's favor).

As the limitation in 5(i)(iii) would not apply to claims brought under 5(i)(i) or (ii), the Court must consider whether the parties plausibly could have intended for the Affirmative Covenant to apply to intentional acts and misconduct by United Bank under either of the first two subsections. United Bank asserts that the circumstances clearly indicate that the parties intended the Covenant to cover intentional acts, and the parties involved were "sophisticated businesses and individuals." Counter Claimant's Resp. to Counter Defs.' Mot. to Dismiss 8. In reply, Counter Defendants argue that "United Bank fails to explain how being sophisticated in and of itself indicates how [Counter Defendants] specifically intended to agree on indemnification for intentional torts." Counter Defs.' Reply to Counter Claimant's Resp. to Counter Defs.' Mot. to Dismiss 6. Counter Defendants are correct; while the Court will consider the relative sophistication of parties when determining potential procedural unconscionability in contracting, *see Hampden Coal, LLC v. Varney*, 810 S.E.2d 286, 298 (W. Va. 2018), the Court knows of no authority indicating that sophistication alone is sufficient to imply intent to indemnify against intentional acts.

Yet, plausibility analysis under Rule 12(b)(6) requires the Court to make all reasonable inferences in the non-moving party's favor. *Ashcroft*, 556 U.S. at 678. Here, subsections 5(i)(i) and (ii) could have plausibly been intended to apply to intentional acts by United Bank. The fact that there is a disclaimer regarding intentional acts in the latter half of subsection (iii) but not any such disclaimer applying to (i) and (ii) could be reasonably interpreted as a signifier of the parties' intent to include coverage for intentional acts in (i) and (ii). Nor does the broad language in the initial 5(i) provision lend itself to an inference of exclusion of intentional acts; the list of near-synonyms (e.g., "claims, expense, damage, loss or liability") and the phrase "any and all"

when outlining the contours of the applicability of the provision both plausibly denote inclusivity. Therefore, in evaluating this Motion to Dismiss, the Court concludes that United Bank's Counterclaim plausibly asserts an interpretation of the Clearwater Loan Agreement which could entitle them to relief. Accordingly, Counter Defendant's Motion under 12(b)(6) is **DENIED.**

## IV. CONCLUSION

For the forgoing reasons, the Court **DENIES** Counter Defendants Clearwater Investment Holdings, LLC and Jeffery and Patricia Hoops's Motion to Dismiss Defendant United Bank' Complaint for Declaratory Judgment. ECF No. 9. The Court **DIRECTS** the Clerk to send a copy of this Order and Notice to counsel of record and any unrepresented parties.

ENTER: November 21, 2022

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE